Kloock et al., Appellants, *v.* Rusnack et ux.

Argued November 10, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John Lightcap,* with him *A. Frank Steiner,* for appellants.

*Avra N. Pershing, Jr.,* for appellees.

OPINION BY HIRT, J., January 14, 1949:

This is the second appeal in this equity proceeding. The factual background of the present controversy may be thus stated: Caroline Johnston owned a farm of 80 acres in Unity Township, Westmoreland County. A public road running east and west divided it into two parts. South of the road she erected a dwelling house for her own use and piped water to it from a spring on her farm about 1100 feet north of the road. In 1902 and again in 1903 she conveyed the same lot, comprising one acre of land "having erected thereon a two story dwelling house, a frame stable and other improvements; being the present dwelling house of said first party" unto the Trustees of St. James Evangelical Congregation together with all "rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging". Both conveyances were conditioned upon the continued use of the premises as a parsonage by a pastor of the above congregation. The first deed provided for a reversion of the title to the grantor in the event that the premises

became vacant or ceased to be used for parsonage purposes for six months. The second deed increased the period to one year. In 1909 Caroline Johnston, by deed, again conveyed the above one acre lot with the dwelling house and other improvements upon it, to St. James Evangelical Church, in its corporate name. The purpose stated in the deed "being to remove all the conditions attached to the aforesaid conveyance, and to convey the within described tract of land", to the church in fee simple. The "aforesaid conveyance" referred to was the deed of June 6, 1903, recorded in Westmoreland County Deed Book 370 at page 107. In 1904 Caroline Johnston had conveyed to the trustees of the church 23.22 additional perches of land adjoining the one acre lot previously conveyed. The 1904 conveyance by its terms gave to the trustees "or their successors" "the right of way to the use of the water in the spring on her farm situated about eleven hundred feet more or less from the parsonage also the right to go on said farm to repair water line or to put down new pipe at any time". The 1909 conveyance to the church made no reference to the 23.22 perches conveyed to its trustees in 1904. The portion of the farm north of the road on which the spring is located, was conveyed to the Rusnacks, the defendants, in 1913.

Beginning in 1931 the Rusnacks materially diminished the flow of water to the dwelling house on the one acre tract, below normal requirements, whereupon the trustees brought this action in equity for an adjudication of their rights to water from the spring. And consistent with our opinion in the first appeal, (150 Pa. Superior Ct. 45, 27 A. 2d 787) the lower court, on remission of the case to it, entered this decree: "And now, to wit, this 30th day of November, 1942, upon due consideration, and in accordance with the opinion of the Superior Court, it is ordered, adjudged and decreed that the rights of Steve Rusnack and Mary Rusnack, his wife, defendants, to the water in a certain spring granted

to the Trustees of St. James Lutheran Church of Youngstown, in the deed of Caroline Johnston, dated the 15th day of April, 1904, and recorded May 16, 1904, in Deed Book Vol. 376, page 177, are subordinate to the rights of the plaintiffs, Trustees of St. James Lutheran Church of Youngstown Borough, and that the plaintiffs are entitled to all the water that is reasonably necessary for the Church parsonage. ... ." And "It is further ordered, adjudged and decreed that Steve Rusnack and Mary Rusnack, defendants, their heirs, agents, servants, employees, children or assigns, are hereby restrained forever from interfering with the plaintiffs, their successors or assigns, in going upon the land of the defendants, to inspect the spring and water line, to repair the pipe line or replace the same by putting down new pipe at any time or to repair the spring. .. . ."

In 1942 fire destroyed the dwelling house and little if any water was taken from the spring by representatives of the church thereafter. On September 15, 1945, the church conveyed the one acre lot and the adjoining 23.22 perches of land to George W. Hutchison and wife, the present owners, by deed containing covenants of general warranty, and this addition to the habendum clause: "Together with all water rights acquired by the grantor and covering adjoining premises, as recited in the Deed [dated April 15, 1904, referred to above] to the grantor, recorded in Deed Book 376, page 177, and as contained in Order of Court . . . [above quoted] in Equity".

The lower court retained the bill, following its order in 1942, and on March 5, 1946 the Rusnacks petitioned the court in this same proceeding for an order restraining the Hutchisons from taking water from the spring, and giving to the Rusnacks the exclusive use thereof. After hearing the lower court in effect found that the water rights granted to the trustees of the church were personal to the church and could not be assigned; and by final order: ". . . decreed that George W. Hutchison and Keziah B. Hutchison, his wife, acquired no interest

to the water rights by the deed from the church to them, dated September 15, 1945, and that Steve Rusnack and Mary Rusnack, his wife, are entitled to use and enjoy their property free and clear of any of the water rights granted to the church".

There was an error in the agreed facts before us in the prior appeal, to wit: that Caroline Johnston built the dwelling house on the lot comprising 23.22 perches of land adjoining the one acre lot previously conveyed to the church. The error however was unimportant in that appeal because the issue there was whether the church was entitled to water for the use of the existing buildings wherever located on the land. The dwelling house was on the one acre lot and we have referred to the various deeds with some particularity to make it apparent that the lower court fell into error in perpetuating the above mistake of fact as to the location of the parsonage. By the 1902 and 1903 deeds the church received a defeasible title to the one acre lot and the dwelling house "with the appurtenances". The 1904 deed of the 23.22 perches was made while the church's title to the one acre lot was still defeasible. It probably was intended to add to the curtelage of the dwelling house but there was no prior easement in favor of this lot as dominant to the use of the Rusnacks' spring. The 1904 deed conveyed the 23.22 perches of land to the trustees, "their successors and *assigns*" but the rights to water from the spring, as appurtenant to the grant was given only to "the trustees *or their successors*". But whether that deed conveyed an easement in gross or appurtenant to the land does not decide the question in this appeal.

It is clear that Caroline Johnston, when she lived in the house which she had built, had created a quasi easement, in favor of it and its curtilage, upon the spring north of the road as the servient tenement for water to supply her needs. And this easement was conveyed to the church as appurtenant to the land (though the whole

title was then defeasible) by the 1902 and 1903 deeds. And when the conditions to these conveyances were removed by the 1909 deed the church became the absolute owner of the land together with the easement appurtenant to it and the deed of the trustees to the Hutchisons carried the water rights with it. It is therefore apparent that the Hutchisons' rights to water stem not from Caroline Johnston's deed in 1904 but from the implied easement appurtenant to the one acre lot previously conveyed by her to the trustees of the church. The water rights, here in question, having passed to the church as an appurtenance of the one acre lot, inured to the benefit of the Hutchisons on conveyance of the lot to them, regardless of the fact that no reference thereto was contained in their deed. "It is a well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law": *Heffley v. Lohr*, 149 Pa. Superior Ct. 586, 27 A. 2d 275. And when an easement exists it is not important that it is not referred to in a particular deed or deeds in the chain of title: *Ozehoski et al. v. Scranton Water Co.*, 157 Pa. Superior Ct. 437, 440, 43 A. 2d 601. Moreover, the fact that the dwelling house burned does not affect the Hutchisons' rights. It is unnecessary that the owner of an easement appurtenant to the land consistently makes use of it, to maintain his ownership. *Werry et ux. v. Sheldon et al.*, 148 Pa. Superior Ct. 13, 24 A. 2d 631; *Weaver v. Getz*, 16 Pa. Superior Ct. 418.

The decree vacating the order of the lower court dated November 30, 1942, is reversed and that order is reinstated as declarative of the rights of George and Keziah B. Hutchison, appellants, to the use of the spring on defendants' land.