THOS. ZELL'S EXRS. v. UNIVERSALIST SOCIETY.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued February 27, 1888—Decided March 26, 1888.

1. When a continuous and apparent easement or servitude is imposed by the owner of land upon one portion of it for the benefit of another portion, a purchaser at either a private or a public sale, in the absence of an express revocation or agreement on the subject, takes the servient property subject to the easement or servitude.

2. Where the plaintiff, owning a lot fronting upon a public street purchased a lot in the rear thereof which then had appurtenant to it an easement of way over a private alley, he was not bound to relieve the alley from the servitude and impose it upon his lot in front of the one purchased.

3. The plaintiff claiming an easement of way over a lot the soil of which

Statement of Facts.

was in the defendant, an offer of the latter to prove that at a judicial sale of the alleged servient lot to the defendant's grantor an agent of the plaintiff was a bidder, is inadmissible as evidence that the plaintiff at that time claimed no easement of way therein.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 278 January Term 1887, Sup. Ct.; court below, No. 28 August Term 1884.

On June 17, 1884, a summons in case was issued by the First Universalist Society of Berks county against Thomas Zell, charging the obstruction of an easement of way claimed over a strip of ground five feet wide owned by the defendant, the obstruction complained of being the projection by the defendant in 1883 of a terra-cotta drain-pipe from the rear of his lot 15 inches into the locus of the easement. Thomas Zell having died, Josephine Zell et al., his executors, were substituted.

FRANKLIN

Universalist Soc. | Boas | Clemson | Winters

FOURTH — LEWIS — WOOD

TYSON

At the trial on January 11, 1887, the facts appeared, as illustrated upon the foregoing sketch, as follows:

Prior to 1839, James M. Lewis owned a lot in Reading, fronting west 45 feet on Fourth street and extending back of even width east to Wood alley. He also owned the lot across Wood alley, directly opposite and extending through to Fifth street, on which until his death in 1863 he resided with his mother. On the north, abutting upon the first mentioned lot,

beginning at Wood alley, were lots of Winters, Clemson, Boas and the Universalist society, these lots fronting on Franklin street; on the south along its whole length was the lot of Tyson. There were no improvements upon the Fourth street and Wood alley lot, until in 1839 Lewis put a frame building at the front on Fourth street on his south line. Mrs. Miller, a sister of Lewis, lived in this frame building. In visiting each other, Lewis, his mother and sister, passed backward and forward across Wood alley and through a gate at the rear of the Fourth street lot at the south line.

In 1857, Lewis removed the frame house back to a part of his lot in the rear of that of the Universalist society, and put up three brick dwellings at the front on Fourth street, one of which, next the Tyson line, was occupied by Mrs. Miller till after Lewis's death. A division fence was run across the lot in a line with the west side of the Universalist church building, with a gate in it in the rear of the dwelling occupied by Mrs. Lewis, through which the intercourse kept up as before.

Between 1854 and 1860, Lewis sold in parcels the rear end of the Fourth street lot, except a strip or passage-way five feet in width along the Tyson now Diehl line; Winters, Clemson, and Boas on the north each purchasing a parcel to extend the depth of their lots. In the deeds these parcels are all described as bounded on the south by "other property of James M. Lewis." The passage-way reached from the Wood alley gate immediately into the parcel in the rear of the Universalist church lot, without a gate at this point, and was the only means of egress and ingress for the tenants of the frame dwelling. While the tenants would pass through the gate opening to the brick dwellings at the front for water, it was not used by them to reach Fourth street; the gate and passage-way however were still used by Lewis, his mother and sister, as a convenient means of intercourse.

Lewis died indebted in 1863, and in 1864 all his real estate had to be sold at Orphans' Court sale for the payment of debts. The lot containing the frame building, of the full width of 45 feet, was sold to the Universalist society for $400, but neither in the petition, order, return, nor deed from the administrator, was any mention made of a right of way over the five feet strip. This strip was itself put to sale. J. M. Hoffman had become

the owner of the Clemson lot on the north.   In the proceedings for the sale, the strip was described as purpart 5, five feet in width, bounded on the north by Winters, Hoffman and Boas, and on the west by property sold to the Universalist society, and it was sold at public sale to James M. Hoffman for $115, the deed being delivered September 19, 1864.

In 1867 the frame building at the rear of their church lot was torn away by the Universalist society and the church edifice fronting on Franklin street extended thirty feet south, which left of the parcel 15 feet therefrom to the south line of the lot unoccupied by any building.   On November 11, 1882, the heirs of James M. Hoffman conveyed to Thomas Zell, the defendant, the house and lot fronting on Franklin street and in the same deed the five feet strip bought at the Orphans' Court sale.   In 1883, Zell put in the terra-cotta drain-pipe alleged to be a disturbance of the easement of way claimed by the plaintiff.

William T. Lyon, called for defendants:

Defendants propose to show that George W. Goodrich, the agent of the Universalist society, was present at the sale when the administrator of James M. Lewis sold the 5 foot tract to James M. Hoffman, and bid against Hoffman, and ran the property up to $115, for the Universalist society, the plaintiff: This for the purpose of showing that the contention of the plaintiff that they claimed the right to this alley from the time that they bought the lot to this time is not true ; and that at the time of the sale by the administrator the church claimed no right of easement in this alley.

The plaintiff objects to the testimony as wholly irrelevant and immaterial.

By the court: The. defendants may show that the church claimed no right of easement, any admission that they claimed no easement; but the fact of bidding would not be evidence. To that extent the objection is overruled; but as to the balance of the offer, the objection is sustained.[7]

The court, ERMENTROUT, J., charged the jury and answered the points presented as follows:

Before proceeding with the general charge, I will answer the points that were presented by counsel.

The defendants ask the court to charge the jury as follows:

1. James M. Lewis having owned, at the same time, the tenement of the plaintiff and the strip of land used as an alley, and the alley having been made by James M. Lewis while he owned the two tenements, there was no easement created in the alley while both tenements remained in him or his estate.

Answer: We answer that point as follows: That, whilst strictly speaking, no man can have an "easement" in his own property, because he obtains the same object by the exercise of the right of general property (that is, he is owner with absolute control), and whilst the proper words in law would be "the disposition of property" instead of easement where a man owns both properties himself, yet this term easement in the law books is also used in this connection; and we say to you that an owner may impose an easement on one portion of his real estate for the benefit of another portion, which may, under certain circumstances, pass to his grantee. Whether Lewis did so impose a servitude or easement upon this land is a question for the jury to determine.[1]

2. No easement in the alley passed to the Universalist society by the deed of John B. Grissinger, administrator of James M. Lewis, unless such easement was necessary to the use and enjoyment of the lot sold to the Universalist society, or the deed of Grissinger shows words showing an express intention to create and convey an easement in the alley-way.

Answer: This point we affirm.

3. The deed from John B. Grissinger to the Universalist society contains no particular words showing an intent to create and convey an easement in the alley; and no such easement passed by the deed, unless such easement in the alley-way was necessary to the enjoyment of the lot purchased by the Universalist society.

Answer: This point we affirm.

4. A way of necessity exists only where there is no other means of reaching the public street or highway.

Answer: This point we affirm.

5. It being the uncontradicted evidence in the case, that the lot purchased by the Universalist society from the estate of James M. Lewis, is bounded on the north by another lot of the Universalist society, and that the latter lot fronts on Franklin

street; if the jury believe, from all the evidence in the case, that access to the public street can, with reasonable convenience, be had from the lot bought by the society from Grissinger, over the lot of the society fronting on Franklin street, then an easement in the alley was not necessary to the use of the lot bought from Grissinger, the plaintiff cannot recover, and the verdict should be for the defendants.

Answer: We decline to charge you as requested in this point.[2]

6. Under all the evidence in the case the verdict should be for the defendants.

Answer: We decline to instruct you as contained in this point.[3]

The plaintiff requests us to charge you as follows:

I will take the first and second points together. The third point has been withdrawn.

1. Where a permanent or visible easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another portion, the law is well settled that the purchaser at private or judicial sale of the portion so benefited, is entitled to the easement as it existed at the time of sale.

2. If such easement or servitude was notoriously and plainly visible, and was used and enjoyed exclusively in connection with the lot so benefited, a purchaser of said lot, being the dominant tenement, is entitled to the same exclusive enjoyment of the easement.

Answer: These two points we affirm with the qualification, provided that from the character of such servitude or easement, it may be fairly presumed that the owner intended the preservation of the servitude or easement as necessary to the convenient enjoyment of the property.

4. In the present case, it having been proved that James M. Lewis was the owner of the lot in the rear of plaintiff's church, on which a dwelling stood, and also of the strip of five feet wide, and extending a distance of sixty-three feet from said lot to Wood street; that said strip was fenced on both sides and furnished the only means of ingress and egress to and from said lot to the public highway; that during Lewis's ownership and until after the conveyance of the lot to the plaintiff, the five feet passage-way had a gate on Wood street, but

was open where it entered the lot, and was exclusively used by Lewis and his tenants (who had no other outlet to the public road) from 1860, and previously, down to the time of his death in 1863, and afterwards by his representatives till its sale to the plaintiff in March, 1864; if the jury believe the facts, and they are not contradicted, said five feet passage-way became a permanent and visible easement appurtenant to said lot, and upon its sale by the administrator of Lewis, passed the exclusive use of said easement to the purchaser. Even if plaintiff has no exclusive use of the said passage-way, but only a right to its enjoyment as it was used at the time of the conveyance to the church, the defendants have no right to interfere with or obstruct such use.

Answer: This point is lengthy, and assumes all the facts in the case. If the jury find that such facts exist, this point is affirmed. But all the facts we propose leaving to the jury.[4]

5. Under the facts as detailed in the fourth point, the defendant's testator, against whom this suit was originally brought, had no right to extend a drain-pipe into the said five feet passage-way from his lot, and permit the refuse water to pass into it; and for so doing, if the jury believe the facts as proved by plaintiff's witnesses, the plaintiff is entitled to recover such damages as they shall find the plaintiff has sustained.

Answer: If the jury find the facts as detailed in the fourth point, and that there was a right of way existing in the plaintiff over this tract, through this alley, then the extending of the drain-pipe into this passage-way, and permitting this refuse water to pass into it would be an obstruction of the plaintiff's right of way, and the society would be entitled to recover damages.[5]

6. Under the uncontradicted evidence in this case the plaintiff is entitled to recover.

Answer: That point we decline to affirm.

Having now disposed of the points, let me draw your attention to what the court conceives to be the real issue in this case. The defendants being the owners of the ground, it is necessary for the plaintiff to show that there is a right of way over this five feet alley. The burden is upon the plaintiff.

Charge of Court below.

What is the claim ? In the deed of the plaintiff, there is no right expressly given; but the plaintiff alleges that where there is a deed of such a character, with these peculiar circumstances of an easement as is alleged by the plaintiff over this alley, it is not necessary to put the words granting a right of way into the deed; but that, by implication of law, when the plaintiff received the deed the right of way over this lot followed. It is therefore necessary to make the inquiry whether there was a right of way over this alley.

It appears from the testimony that this five feet alley was reserved out of the other property sold to adjoining neighbors by Lewis, the former owner. At the time of that reservation, he owned the property on Fourth street, the property directly back of the church, and this five feet of ground. There was a fence dividing the ground immediately back of the Universalist church from the ground fronting on Fourth street, with a gate leading to one of the properties on Fourth street, in which Lewis's sister lived. The balance of this lot behind the church was fenced in, except where this alley began. That was an open space. There was a gate on Wood street. The house erected upon that strip of ground is described in the proceedings of sale as " a certain frame dwelling-house and lot of ground upon which the same is erected." So that you start out in this case with the fact that there is a dwelling-house situated upon this lot of ground. Whilst the property was in the possession of Lewis, what was the manner of its enjoyment? How did he use it? What did he do with it? Did he impose upon this five feet alley the servitude of a right of way for the benefit of this frame house and lot of ground?

It is within the power of an owner, as I have already stated, to create what is called a servitude on one part of his property for the benefit of another, and when that servitude is of a permanent nature, notorious, plainly visible, and from its character it may be presumed that the owner was desirous of the preservation of that servitude or right of way, as evidently necessary to the convenient enjoyment of the property to which it belonged, that right of way became a servitude.

The first inquiry then is : Did Mr. Lewis impose this servitude upon that ground ? Is it of a permanent character ? Was it necessary to the use and enjoyment of the dwelling-house

and lot of ground? Was it continuous, apparent, designed to be permanent, and without it could the necessary enjoyment of the property have been had? For if it was continuous, apparent, necessary, notorious, plainly visible, without which the necessary enjoyment of the property could not be had, and the jury can fairly presume that the owner desired that this right of way should be preserved for the convenient enjoyment of that dwelling-house, and that such was the condition of affairs when the Universalist society bought it, then they took this dwelling-house and lot of ground with this right of way in connection with it, and it made no difference whether the right of way was mentioned in the deed or not. It was not necessary to mention the right of way in that deed to pass a title to it, because the law says that if this servitude is so visible, plainly visible, notorious, permanent in its nature, necessary to the use and enjoyment of the property, of such a character that it may be presumed that the owner was desirous it should be preserved for the convenient necessary enjoyment— not a pure matter of convenience—for the necessary enjoyment of the property to which it belonged, then it passed with the deed, without any mention in so many words. And if you find from the evidence in this case these facts, then the plaintiff's right of way over this alley is established in law. If you find otherwise, there could be no verdict for the plaintiff ; the verdict would be for the defendants.

. If the jury find, then, that fact—that there was such a right of way as I have described—the next question is : " Was there an obstruction in it ? " Bear in mind that, although the defendants may have a title to and be the owners of the land, although they may have bought this property at public sale, it is of no account whether this property is subject to this right of way, so far as their purchase is concerned, if the jury find that Lewis fixed the permanent character of this right of way, made it notorious and plainly visible, and impressed it with such a character as to indicate that the owner was desirous of its preservation as necessary to the convenient enjoyment of the property. It makes no difference that defendants produce their deed. The law says that if such a notorious and visible state of facts existed, they bought this very land subject to this very right of way belonging to the frame house and lot.

You will therefore inquire whether there was any obstruction. I have said to you, in answer to one of the points, that the projecting of a six-inch drain out into that alley, as alleged by plaintiff, was an obstruction. The law considers that an obstruction to a right of way which sensibly interferes with the person's right of way over that tract, and if the right of way was for passing in and out (it is not a mere matter of convenience, they may be able to step to one side or the other, or over it), the pipe being in their way, and a sensible interference, it would create an obstruction in law, and the plaintiff would have a right to recover.

[In the consideration of the question as to whether this servitude is open, notorious and visible, and whether it was adopted by the owner of the land, and of such a character as to be fairly presumed that he intended its preservation as necessary to the convenient enjoyment of the property, you will consider how this way was created and used and its relation to this property. The fact that the Universalist church owned adjoining property has nothing at all to do with this case. You will look at this property in the light of the fact that its sale was made as a frame dwelling-house and lot of ground. And in the consideration of the question of what was necessary to the convenient enjoyment of that property, you consider that property as a property, as a frame dwelling-house and lot of ground; as a property by itself, regardless of the fact that the Universalists have another property in that neighborhood.

Now, under the state of facts as shown, what were the means of exit from that property as designated or marked out by Lewis? Is there shown in this case any other means of exit designated by Lewis, except this alley? It is fenced in on all other sides. This is the only means by which the tenants passed over that property to Wood street. And the jury will consider that fact in ascertaining whether the owner desired the preservation of this right of way as necessary to the convenient enjoyment of that property.] [6]

You will take into consideration all the facts in this case, under the instructions as to the law, that I have laid down to you. And in considering this case, you are required to discard all matters of feeling. The question of religious faith is

one of opinion. In this country a man has a right to believe just what he pleases, and his case is not to be made good or bad simply because in matters of religious faith you may not agree with him. You are to determine this case from the law and facts as presented to you, free from any prejudice; and you are to look at this question, not as if there was a church property on the one side and a woman on the other, but you are to inquire: What is the law? What are the facts? And in that way, you are to make up your verdict.

The verdict of the jury was in favor of the plaintiff for nominal damages, no more being claimed. When judgment was entered, the defendants took this writ, assigning for error:

1–3. The answers to the defendants' points.[1][2][3]

4, 5. The answers to the plaintiff's points.[4][5]

6. The part of the charge embraced in [ ][6]

7. The refusal of the defendants' offer.[7]

*Mr. H. Willis Bland* (with him *Mr. Benj. F. Dettra*), for the plaintiffs in error:

1. There are no words in the deed to the society expressly granting the right of way; it must have passed, therefore, if at all, by implication, as an appurtenance to the church lot. But to pass as an appurtenance, it must have been necessary to the enjoyment of the lot granted, not an incident or convenience: Howell v. McCoy, 3 R. 270; Francies' App., 96 Pa. 213; Adams's App., 7 W. N. 86; Washb., Easem., § 12; Morrison v. Marquardt, 24 Ia. 64. A way is a discontinuous easement, and does not pass without express grant or necessity: Lampman v. Milks, 21 N. Y. 505; Washb., Easem., § 17; Francies' App., 96 Pa. 207. And there can be no enlargement of the original use: Kirkham v. Sharp, 1 Wh. 332; Shroder v. Brenneman, 23 Pa. 350; Rolle, 391; Howell v. King, 1 Mod. 190; Henning v. Burnet, 8 Exch. 192.

2. The society having extended their church building over the Lewis addition, cannot use the alley in connection with their whole and now indivisible property, because the change of the condition of the dominant estate has increased the burden, and the excess cannot be separated from the rightful enjoyment: Jones v. Tapling, 11 C. B. 283; Sharp v. Han-

cock, 7 Man. & G. 354; Fitzhugh v. Raymond, 49 Barb. 646; Nat. Manure Co. v. Donald, 4 Hurlst. & N. 19; Chase v. Manufacturing Co., 4 Cush. 152. And, moreover, with the destruction of the frame house, the privilege, if any, ceased; the duration of an easement is limited by the purpose of the dominant tenement: Allan v. Gomme, 11 Ad. & E. 759.

3. From the time when the society purchased the Lewis lot, they have had no occasion or necessity for the way. The society has access over its own land to the public streets. The way of necessity ceases as soon as the necessity to use it ceases: McDonald v. Lindall, 3 R. 495; Abbott v. Stewartson, 47 N. H. 230; Holmes v. Seely, 19 Wend. 508; Pierce v. Ledlock, 18 Conn. 321; Lawton v. Rivers, 2 McCord 445 (13 Amer. D. 741); Nicholas v. Luce, 24 Pick. 102; Witter v. Harvey, 1 McCord 67; Howell v. McCoy, 3 R. 256.

4. So long as both parts belonged to the same owner, there can be no easement in favor of one part, or servitude on another: Washb. Easem., 49*; Fetters v. Humphreys, 4 Green C. E. 476. A way comes within the description of a non-apparent easement. If existent before the seizin of the two tenements are united, it is extinguished when the seizin is united, and thereafter has no legal existence.

5. The sixth assignment involves the question of an implied grant. No deed fixing the rights of the parties existing, the question is one of intent to be determined upon a view of the objective features attending the grant of the lot; its physical conditions and surroundings; its relations to the highways before and after the sale; its accessibility after the sale: Leonard v. Leonard, 2 Allen 545; Jeffries v. Jeffries, 117 Mass. 189.

*Mr. A. G. Green,* for the defendant in error:

That the law was correctly laid down by the court below, is abundantly evident from the cases: Kirkham v. Sharp, 1 Wh. 322; Lewis v. Carstairs, 6 Wh. 193; Cope v. Grant, 7 Pa. 488; Seibert v. Levan, 8 Pa. 383; Kieffer v. Imhoff, 26 Pa. 438; Phillips v. Phillips, 48 Pa. 178; Penn. R. Co. v. Jones, 50 Pa. 417; Shroder v. Brenneman, 23 Pa. 348; Overdeer v. Updegraff, 69 Pa. 110; Cannon v. Boyd, 73 Pa. 179; Building Ass. v. Getty, 11 Phila. 305. The principle relied upon

and established is: Where a continuous and apparent servitude is imposed by an owner on one part of his land for the benefit of another part, a purchaser at private or judicial sale takes subject to the servitude.

OPINION, MR. JUSTICE PAXSON:

If the right of the plaintiffs below to the use of the alley in controversy depended upon an express grant in their deed, such right could not be successfully claimed, for no such grant appears.  Nor could such use be claimed from necessity, for no necessity exists, the plaintiffs having access to the lot purchased from the administrator of James M. Lewis, over other ground of their own fronting on Franklin street.  If the right to the use of the alley exists at all, it is by virtue of its being appurtenant to the lot purchased of the Lewis estate.

Upon this question we are in no doubt.  When the administrator of Lewis sold this lot at Orphans' Court sale, it had on it a frame house, the only access to which was by means of the alley in question.  The alley was visible upon the ground; the purchaser could see it, and at the same time could not fail to know that it was the only means of access to the lot about to be sold.  It therefore passed by the sale as appurtenant to the lot, and the fact that the deed contains no express grant is wholly immaterial.  Nor does the fact that the lot was bought by parties owning the land lying between it and Franklin street make any difference.  The alley being appurtenant to the lot, the title to the latter carried with it the right to the use of the alley.  The plaintiffs were not required to impose a servitude upon other lands belonging to them in order to reach the lot which they had purchased from the Lewis estate, and the access to which they were clearly entitled to over the alley in question.

Where a continuous and apparent easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another, the law is well settled that a purchaser at private or judicial sale, in the absence of an express reservation or agreement on the subject, takes the property subject to the easement or servitude : Cannon v. Boyd, 73 Pa. 179, citing Seibert v. Levan, 8 Pa. 383; Overdeer v. Updegraff, 69 Pa. 110.  The right to the use of this alley was a continuous right;

it was attached to the land and not to the person of the owner. Hence it is immaterial that the frame house on the rear of the lot has been removed.

It was contended, however, by the defendants below that even if the plaintiffs had the right to use this alley, they had no right to grant the use of it to De Bourbon, who lives on Fourth street upon property which forms no portion of this lot. De Bourbon is the lessee of the plaintiffs of fifteen feet of the rear portion of the lot, and also of the use of the alley. If the alley is appurtenant to the lot, the lessee of the latter has a right to the use of the alley. Whether he is surcharging it is a question not raised by this record.

The mere fact that the plaintiffs were bidders at the public sale of the alley was not evidence that they did not claim the right to use it. They might well have desired to purchase the soil of an alley over which they had the right of way, if for no other reason, to avoid any dispute about it in the future. And had they bought it for such reason alone, the result shows it would have been a judicious investment.

Judgment affirmed.