Spaeder *v.* Tabak, Appellant.

Argued November 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Paul A. Stephany,* for appellant.

*Will J. Schaaf,* with him *Marsh, Spaeder, Baur &
Spaeder,* for appellees.

OPINION BY DITHRICH, J., January 17, 1952:

This is an appeal from a decree enjoining defend-
ant from maintaining any barrier across a driveway
extending over property owned by defendant and from
interfering in any manner with its use by plaintiffs.

In 1915 Mary Mueller was the owner of two adja-
cent lots in the City of Erie which together formed a
rectangular tract of land at the southwest corner of
24th and German Streets, extending 63¾ feet along
the westerly side of German Street and 94 feet along
the southerly side of 24th Street. In that year she
caused a garage to be erected on the southwesterly
portion of the land directly behind a dwelling house
located thereon. The dwelling house faced German
Street but the garage faced 24th Street, being con-
nected therewith by a concrete driveway, also construct-
ed in 1915.

On November 15, 1923, the owner conveyed that
part of the property upon which the garage and
dwelling house were erected to Mary F. Hartnick. The
remainder of the land, traversed by the driveway, was
retained by her until May 27, 1925, when she conveyed
it to Herbert E. Riehl. The lot conveyed, now known
as 2406 German Street, having a frontage of 37 feet
on German Street and being 94 feet in depth, was ac-
quired by plaintiffs August 28, 1942. The lot retained,
now known as 2402 German Street, having a frontage
of 26¾ feet on German Street and being 94 feet in
depth measured along 24th Street, was acquired by de-
fendant April 4, 1944.

It appears that sometime between 1924 and 1930
or 1931 Edward J. Schnee, one of plaintiffs' predeces-

sors in title, laid a cement strip next to an existing sidewalk along the northerly side of the dwelling house. Together the strip and the sidewalk constituted a driveway opening onto German Street. This driveway is located entirely on the lot now owned by plaintiffs, but the chancellor stated, on the basis of substantial evidence, that access to the garage by its use is possible only after a "laborious process of backing and turning," and "In the event defendant were to construct any building or wall of a permanent nature upon the party line, it is extremely doubtful that the turn into the garage could be negotiated."

There is also substantial evidence to support the finding that "All holders in the chain of title between Mary Mueller and the present plaintiffs consistently and openly used the driveway . . . [constructed by the common owner] as the primary means of access to the garage established upon their property." Following defendant's interference with their use of the driveway, plaintiffs filed a bill in equity for an injunction. The court, in granting the relief sought, held that plaintiffs had the right to the free and uninterrupted use of the driveway as an implied easement appurtenant to their lot.

In the recent case of *DePietro v. Triano,* 167 Pa. Superior Ct. 29, 74 A. 2d 710, in an opinion by RHODES, P. J., the well-settled principles of law relating to implied easements were stated as follows (pp. 31, 32, 33) : "To establish an easement by implication on the severance of the unity of ownership in an estate there must be (1) a separation of the title, (2) such continuous and obvious user before the separation as to show an intention to make the alleged easement permanent, (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting. Becker v. Rittenhouse, 297 Pa. 317, 325, 147 A. 51. For an

easement to arise by implication of law, an apparently permanent and obvious servitude, which is reasonably necessary to the enjoyment of the dominant estate, must be imposed by the common owner prior to severance of the title. Heffley v. Lohr, 149 Pa. Superior Ct. 586; 27 A. 2d 275; Vanderwerff v. Consumers Gas Co., 166 Pa. Superior Ct. 358, 71 A. 2d 809. . . . Whether an easement by implication arises depends on the intent of the parties or common owner, and that intent is determined from the nature of the property, the surrounding circumstances and the inferences drawn from those circumstances. Philadelphia Steel Abrasive Co. v. Louis J. Gedicke Sons, 343 Pa. 524, 527, 23 A. 2d 490; Baslego v. Kruleskie, 162 Pa. Superior Ct. 174, 176, 56 A. 2d 377."

Appellant contends, however, that appellees failed to prove the intention of Mary Mueller and Mary F. Hartnick to create an easement at the time of severance. She points to the fact that when the lot at 2406 German Street was conveyed by Mary Mueller its width was $3\frac{1}{4}$ feet greater than it was when purchased by her. From this fact appellant infers that the parties intended to provide sufficient space for the construction of a driveway connecting the garage with German Street, and further infers the negation of any implied intention that an easement was to arise in favor of the grantee with respect to the driveway passing over the lot retained.

While the change in dimension is a relevant fact from which the inferences proposed could have been drawn, it must be borne in mind that whether given inferences should be drawn from an equivocal fact is a matter for the trier of fact, in this case the chancellor. Certainly the inferences contended for lose force when examined in light of the fact that although a driveway was actually constructed on the northerly boundary of the lot conveyed, coinciding with the intention of the

parties as appellant would have it inferred, that driveway is demonstrably unsuited and inadequate as a means of access to the garage. Moreover, the change in dimension is of slight significance when weighed with other circumstances bearing on the question of intention. It is evident that those elements necessary to establish an easement by implication on severance of title, as enumerated in *DePietro v. Triano,* supra, are also the principal circumstances which imply an intention to create an easement. Cf. Restatement, Property, §476; *Baslego v. Kruleskie,* supra. The evidence discloses that all of those elements are clearly present here.

Mention having been made of the second driveway, a brief comment on the element of necessity in these cases is called for. It should be noted that the necessity required pertains to the extent of necessity at the time of severance. *Heffley v. Lohr,* supra; *DePietro v. Triano,* supra. Furthermore, "Implied easements such as these do not arise only from absolute necessity. 'How far necessity or great convenience enters into the question in cases of this class is thus stated in Phillips v. Phillips, 48 Pa. 178: "It is not to be understood by this doctrine that any temporary convenience adopted by the owner of property is within it. By all the authorities it is confined to cases of servitudes of a permanent nature, notorious or plainly visible, and from the character of which it may be presumed that the owner was desirous of their preservation *as servitudes, evidently necessary to the convenient enjoyment of the property* to which they belong".': Koons v. McNamee, 6 Pa. Superior Ct. 445 [449]. (Italics added.)" *Heffley v. Lohr,* supra, pp. 590, 591.

Appellant also argues that the driveway constructed by the common owner was never used *as an implied easement,* indicating that the parties to the severance transaction did not intend the creation of an easement.

However, this argument is of little value. The fact of user or nonuser of the driveway, as an implied easement or otherwise, *subsequent to the time of severance,* cannot be important to the determination of the issue of the creation of an alleged easement where the record discloses an imposition *during the unity of title,* of an apparently permanent servitude on one part of an estate in favor of another part of an estate, which servitude, *at the time of severance, was in use* and was reasonably necessary to the fair enjoyment of the other part of the estate, i.e., where the record discloses the presence of all the elements necessary to the establishment of an easement by implication on severance of title. *Heffley v. Lohr,* supra; *DePietro v. Triano,* supra.

We are of opinion that the chancellor was correct in concluding that an easement implied in law was created. Cf. *Liquid Carbonic Co. v. Wallace,* 219 Pa. 457, 68 A. 1021.

The creation of the easement having been established, the burden was on defendant to show its extinguishment. While the modes of extinguishment are several,[1] there is evidence in this case relating only to one of them—abandonment; but the evidence falls short of establishing it.

Appellant relies chiefly on the existence of the second driveway, located entirely on appellees' lot, constructed by Edward J. Schnee, one of appellees' predecessors in title, for the express purpose of serving the garage, and on the additional fact that for a period of time Schnee paid a monthly rental of one dollar for the use of the original driveway.

"Abandonment is, generally speaking, a question of the intention of the owner of the easement, to be determined from the circumstances of the particular case,

---

[1] Restatement, Property, §497 et seq.; 28 C. J. S., Easements, §52 et seq.

which, to be sufficient to establish an abandonment must clearly manifest such an intention": 28 C.J.S., Easements, §58.

Neither the existence of the second driveway nor the payment of the rental, taken separately, is a circumstance so unequivocal as to establish sufficiently the intentional relinquishment of the easement as a matter of law. Nor do they meet the requirement when taken together.

There are no Pennsylvania cases which decide the effect of the payment of a rental for the use of an implied easement, but the cases of *Thos. Zell's Exrs. v. Universalist Society,* 119 Pa. 390, 13 A. 447, and *Dzmura v. Gyurik,* 41 Pa. Superior Ct. 398, in which the ambiguous character of similar acts is demonstrated, are persuasive that such payment did not effect an abandonment. In the former case the Court said (p. 403) : "The mere fact that the plaintiffs were bidders at the public sale of the alley was not evidence that they did not claim the right to use it. They might well have desired to purchase the soil of an alley over which they had the right of way, if for no other reason [than] to avoid any dispute about it in the future. And had they bought it for such reason alone, the result shows it would have been a judicious investment." In the latter case the Court said (p. 402) : "The fact that . . . the immediate predecessor in title of the plaintiffs—probably in ignorance of her rights under the law, perhaps to avoid the possibility of the litigation that has resulted in this appeal—asked the defendant to sign a paper recognizing her right to maintain the sewer connection and that he refused to do so, was, as the court held, irrelevant. It destroyed no legal right that existed in her, it created none not previously existing in him."

Equally persuasive is the case of *Skelton v. Schenetzky,* 82 Ind. App. 432, 144 N. E. 144, which held that an

easement acquired by prescription is not necessarily defeated by rental payments made for its use, and that whether the payment of rent was made with the intention to relinquish the easement is a factual question for jury determination.

With respect to the second driveway it is sufficient that we refer again to its complete failure adequately to serve the garage. But even had it fulfilled its purpose its existence and use would not have indicated an intention to abandon the easement so long as the easement was also used.

As already noted appellant argues that the easement claimed was not used as such but rather that the holders in appellees' chain of title, without reliance on any legal right possessed by them, used the original driveway under the impression that they were doing so permissively. Significantly, however, in substance it is admitted that the driveway *was used* by all owners of the dominant tenement; and the chancellor so found. Significant also is the fact that its use was not denied to any holder of the dominant tenement until the erection of the barrier which immediately resulted in this litigation.

Where the facts plainly show that an easement was created at the time of severance of ownership, that a consistent user was made of it by all owners of the dominant tenement, that such user was reasonably necessary to the beneficial enjoyment of the dominant tenement, and where it further appears that no impediment to such use was offered by owners of the servient tenement, occasioning the assertion of the legal right to the easement, it cannot be held that there was an intention to abandon the legal right, inferred from a supposed use of the easement by implied permission of the servient owners.

To conclude, we adopt the following from the adjudication by the learned chancellor: "[T]he common

owner subjected her land to a user which has been maintained continuously for a long period of time. The concrete driveway is above ground and plainly visible; it has no reasonable relation to anything on defendant's land and could not be anything but the driveway intended to serve plaintiffs' garage. Under these circumstances a quasi easement was created by the common owner which ripened into an implied easement upon severance."

Decree affirmed at appellant's costs.