## Marston v. Lee

*Kirk T. Karaszkiewicz,* for plaintiffs.
*Allen Weinberg,* for defendant.

YOHN, *J.,* May 1, 1984—The parties to this action are neighbors in Wyncote, Cheltenham Township, Montgomery County, Pa., the Marston property being adjacent to and south of the Lee property. The specific area in dispute is a paved driveway approximately 11 - 12′ in width that traverses the easterly side of the Marston tract from front to back, providing access from the Lee property to Webster Avenue. The continued use of the driveway by Lee has sparked several incidents between the neighbors, prompting plaintiffs to file a complaint in equity on November 25, 1981, to prevent what they alleged to be an unlawful intrusion onto their property.

Plaintiffs contend that the use of the driveway by Lee substantially interferes with the use of their

property as the driveway passes within six feet of the front door of their house. Granting defendant an easement over the driveway would also prohibit the use of the driveway by the Marstons for the parking of vehicles, although there is another paved area which adjoins the driveway and leads to the Marstons' garage which is suitable for that purpose. Defendant responds that he has the right to use the driveway by an implied easement as created by the prior owners of record. It is the opinion of this court that an implied easement exists with regard to the driveway in favor of defendant and plaintiffs' complaint must, therefore, be dismissed.

## FINDINGS OF FACT

1. David S. Marston and Ruth Marston, husband and wife, own property located at 119 Webster Avenue, Wyncote, Cheltenham Township, Montgomery County, Pa. The property is on the northerly side of Webster Avenue and is 70' in width and 212' in depth. It is bounded to the rear by defendant's property.

2. Robert Lee, Jr. is the owner of property located at 160 Fernbrook Avenue, Wyncote, Cheltenham Township, Montgomery County, Pa.

3. A paved driveway approximately 11 - 12' in width traverses the easterly side of the Marston property from Webster Avenue to the southerly edge of the Lee property, a distance of approximately 175'. It is located approximately 3' from the easterly boundary and provides access to the Lee property from Webster Avenue. Lee has used and continues to use the driveway as a means of entrance to and exit from his property onto Webster Avenue.

4. The use of the driveway by Lee has caused several incidents between the neighbors, including: Lee's parking his car in the driveway, locking and leaving it there; the Marston's attempt to obstruct passage by placing firewood on the driveway which was subsequently moved by Lee; and Lee's plowing the driveway only to push some of the snow into an area already cleared by Mr. Marston.

5. The Marstons filed a complaint in equity on November 25, 1981, in the Court of Common Pleas of Montgomery County, to determine the rights of the parties as regards the use of the driveway.

6. On May 1, 1907, the lot presently referred to as the Lee property, on Fernbrook Avenue, was purchased by M. Byron and Mary Megargee.

7. The lot presently referred to as the Marston property, on Webster Avenue, was also purchased by the Megargees on August 8, 1919.

8. On Octobr 2, 1943, the Megargee Estate sold both the house and the lot on Fernbrook Avenue and the lot on Webster Avenue to Wallace and Catherine Nyce.

9. In 1955 the Nyces built a house on the Webster Avenue lot, moved into that house, and sold the Fernbrook Avenue house and lot to Lindley and Florence Scarlett by deed dated August 25, 1955.

10. The Scarletts sold the Fernbrook Avenue house to Leland and Mary Howe on May 12, 1977; the Howes subsequently sold the house to Robert Lee, Jr. on May 27, 1980.

11. The Nyces sold the Webster Avenue property to David and Ruth Marston by deed dated June 4, 1981.

12. The chain of title indicates that Lee lived in the Fernbrook Avenue house while the Nyces resided in the Webster Avenue house from May 27, 1980 to June 4, 1981.

13. Lee used the driveway in question from the time he moved into his property and the Nyces, who then lived at the Webster Avenue property and had subdivided the two properties, never instructed him not to use the driveway.

14. Lee uses the driveway in good weather as well as bad weather, since it is sometimes more convenient to exit onto Webster Avenue.

15. Arsenius Goregliad, who has lived across the street from the Lee property since 1944, was told by Mr. Nyce that there was to be no fence between the two properties because the driveway was valuable to both.

16. Dr. Sandra Folzer, who has resided at 162 Fernbrook Avenue since 1966, observed both the Scarletts and the Howes using the driveway to Webster Avenue while living at the Fernbrook Avenue house.

17. Lindley Scarlett owned the Fernbrook Avenue property from 1955 to 1977 while the Nyces resided in the house on Webster Avenue. He testified that he used the driveway only with the permission of Mr. Nyce and that Mr. Nyce had placed a sign on the driveway stating "No Access." He further testified that when he sold the house to the Howes he told them that it was not their driveway to use. This is contrary to all of the other evidence in the case.

18. Dr. Folzer and Mr. Goregliad never saw a "No Access" sign on the property.

19. Prior to the construction of the house on Webster Avenue by the Nyces, there was one continuous driveway from Fernbrook Avenue to Webster Avenue in the same location as the present driveway. This driveway was paved from street to street in 1955 by the Nyces, when they constructed and moved to the house on Webster Avenue and still owned both properties.

20. The Nyces sold the Fernbrook Avenue property to the Scarletts in 1955, the same year the driveway was repaved. The repaving was for the Scarletts' benefit since a resident of the Webster Avenue property would have no use for the paving on the rear 175' of that property.

21. The fact that the driveway was paved from Fernbrook Avenue to Webster Avenue indicates that there is an easement over the Marston property since the rear 175' of paving on the Marston tract is only of value to someone using the driveway from the Fernbrook Avenue property to exit onto Webster Avenue.

22. The easement was paved in 1955 and therefore was visible to the Marstons when they purchased the Webster Avenue property in 1981.

23. A driveway connects Lee's property with Fernbrook Avenue; however, this driveway has a narrow entrance and is difficult to traverse in inclement weather. This driveway has a nine percent grade coupled with a ten percent grade for Fernbrook Avenue itself. The owners of the Webster Avenue property have no need to use this driveway and have, in fact, never used it.

24. Lee testified that it would be possible to improve the driveway on his property leading to Fernbrook Avenue; but in his estimation the improvements would be costly.

25. The Marstons' garage is approximately 25-30' from Webster Avenue. A paved area adjoins the driveway at issue and leads to the garage. This paved area is suitable for the parking of vehicles.

26. The deeds produced by plaintiffs and by defendant reveal no express easement with respect to the driveway.

27. An implied easement exists with regard to the driveway in favor of defendant.

## DISCUSSION

An implied easement[1] arises only where such an easement was intended by the parties as shown by the terms of the grant and surrounding circumstances. Nord v. Devault Contracting Co., 460 Pa. 647, 334 A.2d 276 (1975); Flaherty v. DeHaven, 302 Pa. Super. 412, 448 A.2d 1108 (1982). In determining whether the circumstances under which a conveyance is made to create an implied easement, Pennsylvania courts have applied the factors suggested by Section 476 of the Restatement of Property: (a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of the necessity to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties. Lerner v. Poulos, 412 Pa. 388, 392, 194 A.2d 874, 876 (1963); Thomas v. Deliere, 241 Pa. Super. 1, 4-5, 359 A.2d 398, 399-400 (1976).[2] No single factor is dispositive and no

1. The parties agree, and the record shows, that no other type of easement exists.

2. An alternative test has also been applied in Pennsylvania to determine the existence of an implied easement. In Spaeder v. Tabak, 170 Pa. Super. 392, 85 A.2d 654 (1952), the court held there must be: (1) a separation of the title, (2) such continuous and obvious use before the separation as to show an intention to make the alleged easement permanent, (3) a use necessary to the beneficial enjoyment of the land, and (4) a continuous and self-acting servitude. This test co-exists with the Restatement approach in Pennsylvania case law. Thomas, 241 Pa. Super. at 5 n.2, 359 A. 2d at 400 n.2; Motel 6, Inc. v. Pfile, 718 F.2d 80 (3d Cir. 1983). This court is satisfied that an implied easement exists applying either standard.

purley mathematical weighing of factors is possible in determining whether an easement should be implied. Flaherty, 302 Pa. Super. at 419, 448 A.2d at 1112.

A consideration of the Restatement §476 factors weighs heavily in favor of finding the existence of an implied easement in the instant case. The Nyces created the situation by subdividing the tract and constructing the paved driveway along the edge of both lots. The evidence indicates[3] that Mrs. Nyce repaved the driveway from Fernbrook Avenue to Webster Avenue in 1955, the same year that the Nyces moved to the Webster Avenue property and sold the Fernbrook Avenue property to the Scarletts. The paving was obviously for the Scarletts' beneficial use of the easement since a Webster Avenue resident would have no need or use for the rear 175' of paved driveway. Furthermore, the easement was plainly visible to the Marstons when they purchased the home in 1981 and therefore they had notice that Lee owned the easement. The visibility of the easement distinguishes the instant case from Thomas, where the small size of the alleged easement indicated that the parties were merely mistaken as to the the true boundaries of their properties. Thomas, 241 Pa. Super. at 6, 359 A. 2d at 400.

The prior use of the property supports the conclusion that an implied easement was intended. Lee testified that he used the driveway while the Nyces occupied the Webster Avenue house and was never instructed not to use the driveway.[4] Goregliad testified that the Nyces used the Webster Avenue outlet while they were residing at the Fernbrook Avenue address, especially during the winter.[5] Folzer testi-

---

3. Record at 39-40.
4. Record at 51.
5. Record at 31.

fied that both the Scarletts and the Howes also used the Webster Avenue driveway for entrance and exit.[6] This testimony was contradicted by that of Mr. Scarlett, who stated that he used the driveway only with the permission of Mr. Nyce and then only on an occasional basis.[7] However, it is the function of the trial court sitting in equity to resolve credibility issues. United States Steel Corp. v. Hoge, 304 Pa. Super. 182, 450 A.2d 162 (1982). The record contains sufficient evidence that prior residents of the Fernbrook Avenue property utilized the driveway across the Webster Avenue property.

There appears to be conflicting authority in Pennsylvania concerning the requirement of necessity to imply an easement.[8] The court in Flaherty adopted a sliding-scale approach to the necessity requirement, stating that: "as the degree of necessity decreases, the need to refer to other factors suggestive of an intent to create an easement increases substantially." Flaherty, 302 Pa. Super. at 419, 448 A.2d at 1112. Necessity is therefore not an absolute requirement but rather is an indicia of intent to create an easement. Motel 6, Inc., 718 F.2d at 85. In Flaherty, as in the instant case, the inability to use the alleged easement would have greatly inconvenienced the claimant.[9] The Flaherty court held that an easement was implied despite the fact that the claimant had an alternative exit; one factor considered by the court was the precipitous slope of the claimant's property. Similarly, while the driveway is not the sole means of access to the Lee property, the grade of Fernbrook Avenue is an appropri-

---

6. Record at 67-68.

7. Record at 73-74.

8. See, Motel 6, Inc., 718 F.2d at 85; note 2 above.

9. The Fernbrook Avenue driveway is sloped, narrow and difficult to use, especially during the winter. Record at 50-51.

ate consideration in determining the intent to create an easement.

The intent of the prior owners of record and the surrounding circumstances indicate that an implied easement exists over the Webster Avenue property. The easement must remain open at all times; therefore at no time may either party block or otherwise obstruct the driveway.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties to this action and the subject matter thereto.

2. An implied easement was intended by the prior owners of record over the property located at 119 Webster Avenue, Wyncote, Cheltenham Township, Montgomery County, Pa.

3. An implied easement exists over the property located at 119 Webster Avenue, presently owned by David S. and Ruth Marston, in favor of property located at 160 Fernbrook Avenue, presently owned by Robert Lee, Jr., in the form of a paved driveway connecting the 160 Fernbrook Avenue property with Webster Avenue.

4. The easement must remain open at all times; therefore, no person shall block or otherwise obstruct the driveway with a vehicle or in any other manner.

## DECREE NISI

And now, this May 1, 1984, plaintiffs' complaint and request for injunctive relief are hereby dismissed as an easement exists over plaintiffs' property in favor of defendant.

· Pursuant to Pa.R.C.P. 227.4, if no motion for post-trial relief is filed within ten days from the filing of this adjudication and decree nisi, the decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree of the court.