## Moser v. Nocito

*Louis F. Floge,* for plaintiff.
*Kevin T. Keane,* for defendant.

RUFE, *J.,* October 5, 1984—This controversy arises over disputed right of adjacent landowners to

a driveway located between properties designated as 217 and 221 Main Street, Hulmeville, Pa. Plaintiffs Alfred L. Moser, Jr., and Charmaine E. Moser, his wife, reside at 215 Main Street, next to Mrs. Marguerite Moser (plaintiff's mother who resides at 217 Main Street). Defendant Joseph Nocito (grandson of Mrs. Marguerite Moser) owns property 221 Main Street, which borders 217 on the west and north. Plaintiffs allege that a driveway easement exists on the boundary line between 217 and 221 whereby they are permitted access to a perpendicular driveway behind 215 and 217 to permit plaintiff to park his vehicles in his own backyard. Defendant asserts that no easement exists and has prohibited plaintiffs' use of both driveways by constructing a fence along the drive which prevents plaintiffs from driving thereon.

The facts before us reveal the following. Herman Moser, Sr., grandfather of plaintiff, owned property at 209, 213, 215, 217 and 221 Main Street, Hulmeville, Pa.* Mr. Moser, Sr., died in 1934 survived by his wife, Anna L. Moser, who died in 1939. Mrs. Moser named as her executors her daughter, Marie Moser O'Donnell, and Central Penn National Bank. The Moser properties on Main Street were sold piecemeal as follows:

(1) 209 — Sold March 1947 to Stockslager. Later owners were Randell, Mitchell, Hilger, Lindsay and since 1969, Matthews;

(2) 215 — Sold April 10, 1945 with land at 213 to Margaret Dunlap. Later, plaintiffs obtained the property in October 1954,

---

* We note that the 1945 deed conveying 215 to Margaret Dunlap conveyed land identified by measurements consistent with the land comprising both property at 215 and 213 Main Street.

(3) 217 — Held by the executors until February 1968. Then sold to plaintiffs' parents. Marguerite Moser (plaintiff's mother) still resides therein.

(4) 221 — Held by the executors until August 28, 1963. Then sold to Herman L. Moser, Jr., and Lillie Moser. Subsequently the property was deeded over to defendant January 28, 1965.

The deeds for property at 209 from and since 1947 have continually included a clause pertaining to the alleged driveway as follows:

"Together with the free and common use, right, liberty and privilege of the certain [10-foot] wide private driveway to be laid out immediately in the rear of the above described premises extending southeastwardly into and communicating with another driveway leading southwestwardly into Main Street, as and for a driveway and passageway at all times hereafter forever in common with the owners, tenants and occupiers of other lots of land bounding thereon and entitled to the use thereof."

Testimony further revealed that during the ownership of these properties by Herman (Sr.) and Anna L. Moser, until 1934, a store located at 209 received deliveries via the driveway at Main Street and extending behind the properties at 213, 215 and 217. Additionally, it should be noted that lot 221 was vacant until 1981, at which time defendant began construction of his dwelling.

It is the contention of plaintiffs herein that the driveway described in the deed for 209 existed as a dirt road at all relevant times. The dirt drive was admittedly never paved and was more apparent extending from Main Street than the intersecting drive proceeding behind the properties in question. The deeds to properties at 213, 215 and 217 contain no reserved rights of way and make no reference to any easements. Defendant asserts that no driveway

exists on the properties 213, 215 and 217 by easement or otherwise. Further, he asserts that any use of his property prior to construction, or during the ownership of his predecessor in interest, was by accommodation only due to the fact that most of these properties were owned by relatives. Defendant is plaintiff's nephew and Marguerite Moser's grandson.

An implied easement exists "where an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either. The purchaser takes subject to the burden or the benefit as the case may be, and this is irrespective of whether or not the easement constitutes a necessary right of way." Tosh v. Witts, 381 Pa. 255, 258, 113 A.2d 226, 228 (1955). The case law establishes that four elements must be proved for an easement by implication at the severance of unity of ownership: "(1) a separation of the title; (2) such continuous and obvious use before the separation as to show an intention to make the alleged easement permanent; (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting." Baptist Church in the Great Valley v. Urguhart, 406 Pa. 620, 625, 178 A.2d 583, 586 (1962), quoting Spaeder v. Tabak, 170 Pa. Super. 392, 395, 85 A.2d 654 (1952). See also Becker v. Rittenhouse, 297 Pa. 317, 147 Atl. 51 (1929). The burden of proof for establishment of an easement is on the individual asserting its existence and proof must be made by clear and convincing evidence. We believe that plaintiffs herein have met their burden of proof in establishing an easement between the properties at 221 and 217 running behind the houses at 217 and 215. .

The first element, separation of title, has been proved as to the properties at 209, 215, 217 and 221 through the evidence of chains of title from the executors of the estate of Anna L. Moser, Marie M. O'Donnell and Central Penn National Bank. As indicated previously, the 1945 deed conveying property at 215 to Marguerite Dunlap recites property dimensions consistent with the dimensions of the combined properties of 213 and 215.

The second element, continuous and obvious intention to make the alleged easement permanent, is a more difficult factor to fulfill. The intent which is relevant is that of the grantor yet, "[t]he intent which lies at the basis of the creation of a servitude is no longer the grantor's actual and perhaps undisclosed intent, but the mutual intent of the parties as gathered from their acts and circumstances, as well as from their words." Liquid Carbonic Co. v. Wallace, 219 Pa. 457, 460, 68 Atl. 1021 (1908). Marie M. O'Donnell, executrix of the estate of Anna Moser, as common grantor, testified as to the long existence of a driveway behind the properties which was frequently used for deliveries. She stated that the drive existed "as long as she can remember" and that she never tried to prevent anyone from using it. Also, it was stated that ash had been spread over the driveway and that residents of the properties prior to the severance of title had made use of the drives not only for deliveries, but also for individual, personal reasons.

Another factor indicative of the grantor's intent to create a permanent easement is the explicit provision in the Stockslager deed to 209. The provision is a sufficient description of the area and specifies the tract which plaintiff now claims as an easement. While defendant is correct in asserting that "one may not grant an easement over property he does

not own," Woodlawn Theaters v. Michael, 418 Pa. 398, 401, 211 A.2d 454, 456 (1965), quoting Baptist Church, supra, this will "not necessarily frustrate the easement if there was a right, nevertheless, to pass over the land [of another] by license of otherwise." Woodlawn, supra, 201, 456. In such instances, the person asserting the existence of an easement is not required to prove his right to use the intervening parcel of land, rather the easement is enforceable if the dominant tenement is benefitted by use of the servient tenement and such was consistent with the intent of the grantor. We conclude from the testimony presented at trial that the common grantor intended the continuous and permanent use of such driveway behind the properties and further that the provision in the Stockslager deed of 1947 merely codified the conditions existent at that time. Marie M. O'Donnell, as an executrix, still had title to the properties at 217 and 221 in 1947 and could clearly provide for an easement, express or implied, over those premises. Moreover, it is the grantor's intent prior to the separation of title which is crucial and the testimony for the use of the driveway until 1945 (sale of 213 and 215) is clear in establishing the existence and use of such a driveway.

Necessity of the easement for beneficial enjoyment of the property is the third required proof in determining the existence of an easement. As was the case in assessing the intent for continuous use of the easement, the element of necessity is to be valued "to the extent of necessity at the time of severance." Spaeder v. Tabak, 170 Pa. Super. 392, 397, 85 A.2d 654, 657 (1952). On the facts asserted here, the common grantor was well aware of and acquiesced in the use of the drive prior to severance and recognized the continuing necessity of the driveway

for delivery of items to the store, later for patients for the doctor, the use by apartment tenants at 209, and for coal deliveries to all the residences. Also, there exists no other access route to the rear of the properties by public road. Defendant's assertion that plaintiff can obtain access to the rear of his property through the township fire company parking lot is totally inappropriate. The case law discussing alternate access to property contemplates access via public roads not by trespass on adjacent landowner's property. Necessity as required for proof of an easement need not be an absolute necessity, but rather a use necessary to the convenient enjoyment of the property. Heffley v. Lohr, 149 Pa. Super. 586, 27 A.2d 257 (1942). Plaintiff has proved that the use of the driveway in question is required for the convenient enjoyment of his property.

Finally, there is a requirement that the servitude be continuous and self-acting. From the evidence produced at trial, there can be no quarrel that there was obvious and continuous use of the driveway extending from Main Street along the boundary line of 217 and 221. As to the section of driveway perpendicular thereto, this also has been shown to have been used continuously after the easement was created and prior to creation. Certainly the testimony of Mrs. O'Donnell established that the use of the drive during the existence of the store at 209 was more than just on occasional delivery. Other testimony showed that subsequent owners of most of the properties had made use of the driveway in addition to plaintiff's statement that their family used it often. Additionally, although the driveway had never been paved, plaintiffs stated that they had undertaken the care of the drive, e.g., mowing the grass, and further that they had twice put stone on the driveway area to demarcate the area of use.

Defendant has stated that plaintiffs' use of the driveway perpendicular to Main Street was merely a permissive use and did not create an implied easement. We reject this argument. The testimony at trial showed that the use of both sections of the driveway can be traced to the time of the common grantor and that all other elements necessary to the creation of an implied easement are found to exist. Defendant obtained title to 221 in 1965 and no obstacle to the use of the easement existed until defendant erected a fence in 1982.

Since plaintiffs have established the creation of an easement by implication, the burden is shifted to defendant to show that such use has been terminated. Extinguishment of an easement can be found where there is: (1) a cessation of necessity; (2) a merger of title, possession and enjoyment of the dominant and servient tenements; or (3) an abandonment of the easement. This last point is the only claim vaguely possible on the facts before us and to this point, we find Spaeder, supra, dispositive. The court therein stated at 400, 658:

"Where the facts plainly show that an easement was created at the time of severance of ownership, that a consistent user was made of it by all owners of the dominant tenement, that such user was reasonably necessary to the beneficial enjoyment of the dominant tenement, and where it further appears that no impediment to such use was offered by owners of the servient tenement, occasioning the assertion of the legal right to the easement, it cannot be held that there was no intention to abandon the legal right, inferred from a supposed use of the easement by implied permission of the servient owners."

As in Spaeder, plaintiffs herein were not denied the use of the supposed easement until defendant erected a fence preventing such use causing the liti-

gation herein. Also, defendant asserts that plaintiffs did not make more than occasional use of the property and implies that this would indicate an abandonment. This is in contradiction of the case law, however, finding that non-use alone will not extinguish an easement. Hatcher v. Chesner, 422 Pa. 138, 221 A.2d 305 (1966); Crowe v. O'Hagan, 176 Pa. Super. 271, 106 A.2d 872 (1954).

Based on the foregoing, we conclude that plaintiffs have met their burden of proof in establishing an easement by implication. Accordingly, we enter the following

## DECREE NISI

And now, this October 5, 1984, defendant Joseph Nocito is permanently enjoined and restrained from obstructing and causing to be obstructed, in any manner or form, access to plaintiffs' premises by use of a certain 10-foot wide driveway extending from Main Street along the boundary lines of property at 217 and 221 Main Street and extending at a right angle therefrom along the rear property boundary lines of 217 and 215 Main Street. Further, Joseph Nocito is ordered to restore the said driveway to its original usable condition and remove the fence which is now obstructing the easement to plaintiffs' property.

If no exceptions are filed hereto within 20 days of the date of this decree nisi, the prothonotary is directed to enter this as a final decree.