## Heffley *v.* Lohr, Appellant.

Argued May 7, 1942.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY,
JJ.

*Joseph Levy,* with him *Budd B. Boose,* for appellant.

*Charles H. Ealy,* with him *Charles F. Uhl, Simon K. Uhl,* of *Uhl, Ealy & Uhl,* and *G. Kirby Herrington,* for appellee.

OPINION BY HIRT, J., July 23, 1942:

This is an appeal from a final decree in equity restraining the defendant from obstructing a driveway and from shutting off the flow of water to plaintiff's barn.

There is no dispute as to the facts as found by the court below, in substance, that: Peter Heffley and wife in 1905 conveyed a farm, in Somerset County, of about 290 acres, to their daughter Lucy M. O'Donnell. The land abutted on a public road, now State Highway Route No. 219, which marked the eastern boundary of the farm. At that time, the buildings on the land were a mansion house, a reservoir, a garage, a barn, two tenant houses and outbuildings. The only means of access to the buildings, open on the ground, was a lane or driveway, 24 feet wide running westwardly from the highway for the distance of about 1,200 feet. On the land there also was a spring, which, about the time of the above conveyance, was walled in, and by means of a windmill and a system of pipes, water was pumped to a reservoir on higher ground; thence it was distributed by gravity flow to the mansion house and to the barn. Lucy M. O'Donnell later married the defendant and, in 1926, they conveyed the entire farm to her nephew, Edward V. Heffley, reserving the use of the mansion house and a curtilage of about one acre of land and the right to use the driveway. Under the deed, Heffley as grantee convenanted to keep the reservoir and pumping outfit and water system in repair, to furnish a sufficient water supply to the mansion house and grounds, and to maintain the lane in good condition. In 1928 Heffley and wife conveyed the entire farm to the defendant, Amaniah J. Lohr, with the same reservations and convenants contained in the deed to Heffley. On January 1, 1929, defendant and Lucy, his wife, deeded all of the land to Joseph Levy, a straw man; in the deed, the wife released all 'of the specific covenants, agreements, conditions and reservations in her favor'

under prior deeds. The same day, Levy reconveyed to defendant and to Lucy his wife, by entireties, a plot of 27 acres. This plot was carved out of the middle of the east section of the farm with a frontage on the above highway. The above driveway, in controversy, was wholly within the description of the land conveyed and formed its south boundary. This deed from Levy also granted the perpetual right to use the water from the spring located about 1200 feet north of the land conveyed, together with the right to maintain the pumping equipment and the pipe line from the spring to the reservoir. The same day, Levy conveyed the whole farm to Lucy Heffley Lohr, wife of defendant, excepting the above 27 acres. The line between the two tracts, on the severance, divided the group of farm buildings. The mansion house, the garage and the reservoir, after the severance, were on the 27 acre tract; the barn and all other buildings as well as the spring and the windmill were on the larger tract conveyed to the wife. Lucy Heffley Lohr died on December 11, 1936 and by her will devised the land, conveyed to her by Levy, to her niece, Rebecca Heffley, the plaintiff. Upon the death of Lucy Heffley Lohr, title to the tract of 27 acres vested in the defendant, her surviving husband.

The tenant on plaintiff's land had enlarged the barn and increased his herd of cattle. As a result, the driveway was subjected to heavier traffic and the demands on the water system were increased. Until October 1939, both the driveway and the water system served the farm as a whole, without interruption. In that month, defendant, for the first time, claiming that plaintiff's use of the driveway and of the water were permissive only, barricaded the driveway and shut off the flow of water from the reservoir to plaintiff's barn.

The evidence is entirely sufficient to support the finding of the lower court that the water system had then been in continuous operation for upwards of thirty years and during that period, before, as well as

after the 27 acre tract was carved out of it, both parcels
of land were served by it; and that the lane or drive-
way from the State Highway to all of the buildings is
the only 'open, visible, permanent, continuous and con-
venient means of access thereto' and has been so used
by plaintiff and defendant, and their predecessors in
title, for more than fifty years without interruption,
until the present controversy. All of the successive
owners of the land, above referred to, including the de-
fendant, had actual knowledge of these facts.

It follows, regardless of the absence of recitals or
reservations in the deeds of conveyance, that the land
of defendant is subject to easements by implication in
favor of plaintiff's land, as the dominant tenement,
both as to the right to the uninterrupted use of the
driveway and to water from the reservoir on defendant's
land. The driveway and the water system were built
and maintained by former owners for the benefit of
the whole farm. From 1905 until the conveyance to
Edward V. Heffley there was unity of title to the whole
farm in successive owners. Thereafter, and until the
present controversy, there was no restriction upon the
use of the driveway nor the water service to the barn.
Of course, one cannot have an easement in his own land
but 'it is a well-settled rule that where, during the unity
of title, an apparently permanent and obvious servitude
is imposed on one part of an estate in favor of another
part, which servitude, at the time of the severance, is in
use and is reasonably necessary for the fair enjoyment
of the other part of the estate, then upon a severance of
the ownership, a grant of the right to continue such
use arises by implication of law': 17 Am. Jur., Ease-
ments, §33, *Manbeck v. Jones*, 190 Pa. 171, 42 A. 536;
*Nauman v. Treen Box Co.*, 280 Pa. 97, 124 A. 349.

Implied easements such as these do not arise only
from absolute necessity. 'How far necessity or great
convenience enters into the question in cases of this
class is thus stated in *Phillips v. Phillips*, 48 Pa. 178:

"It is not to be understood by this doctrine that any temporary convenience adopted by the owner of property is within it. By all the authorities it is confined to cases of servitudes of a permanent nature, notorious or plainly visible, and from the character of which it may be presumed that the owner was desirous of their preservation *as servitudes, evidently necessary to the convenient enjoyment of the property* to which they belong" ': *Koons v. McNamee*, 6 Pa. Superior Ct. 445. (Italics added.) It therefore is unimportant that plaintiff's land abuts the State Highway and that access thereto might be had by the construction of a new driveway on her land, or that there are other springs on her land from which she could obtain an adequate water supply by installing a system of her own. 'It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant': *Lauderbach-Zerby Co. v. Lewis*, 283 Pa. 250, 129 A. 83.

The conveyance of the whole farm to Levy did not extinguish the easements, regardless of whether there was an undisclosed intention that it should. What determines the existence of an easement is the intention as *implied and manifested by the acts of the parties, (Liquid Carbonic Co. v. Wallace*, 219 Pa. 457, 68 A. 1021) and not their undisclosed understanding as to the purpose or effect of the deed. Levy was merely

a straw man, a medium through which the severance was effected, though made a nominal owner for that purpose. "The owner may undoubtedly alter the quality of the several parts of his heritage ...... Servitudes which are extinguished by unity of title, do not in general revive upon severance; but where they are apparent and obviously continuous, they do." Upon the severance of the estate the "continuous and apparent easements ...... without which the enjoyment of the several portions could not be had," pass to the grantee. *Kieffer v. Imhoff,* 26 Pa. 438.

The easements in this case, created for the specific purpose, inter alia, of providing a right of way and a supply of water, became appurtenant to plaintiff's land as the dominant estate and required no deed or writing to support them. *Lauderbach-Zerby,* supra. Since all of the material facts are undisputed, equity has jurisdiction and the remedy by injunction is proper. *Weaver v. Getz,* 16 Pa. Superior Ct. 418; *Drum et al. v. Dinkelacker,* 79 Pa. Superior Ct. 91; *Wilson v. Cather,* 214 Pa. 3, 63 A. 190.

Though defendant's land is the servient estate, plaintiff may not subject it to undue burdens amounting to an abuse of the privileges flowing from the easements. The intent of the decree as to the use of the water, is that defendant is first entitled to a continuous supply, reasonably adequate for the service of the mansion house, the garage and for the maintenance of his grounds. Plaintiff's rights to water are secondary to that extent.

Decree affirmed.