Opinion by
 

 Hirt, J.,
 

 In 1923 E. Bichard Meinig bought about 159 acres of land in the eighteenth Ward of the City of Beading. A mortgage on the entire tract given by him as part consideration for the purchase was assigned by his grantor to The Beading Trust Company. Shortly thereafter Meinig rehabilitated an ancient dwelling house on the premises and installed plumbing. A septic tank was constructed below ground east of the house, into which the wastes from the house flowed through an underground pipe. The effluent from the septic tank followed a natural southeastern drainage course. In 1928 Meinig laid out the tract into building lots and recorded a plot of the subdivision. The dwelling house occupies parts of lots 168 and 169. The septic tank is located east of the east line of lot 169 below ground wholly on the adjoining lot, 152. Meinig opened Gregg Avenue as shown on the recorded plan along the southerly line of the above lots, and in 1937, while he still owned the entire tract, installed a drainage system discharging the effluent from the septic tank southerly through lot 152 and across Gregg Avenue by means of subsurface terra cotta pipes and a french drain, into an old well just south of the road on lots 40 and 41 of the subdivision.
 

 In 1937 The Beading Trust Company, for a consideration, released lots 168 and 169 from the lien of the above mortgage and in 1938 foreclosed on the mortgage and took title by sheriff’s deed to the tract except the two lots previously released. Plaintiffs, the present appellants, bought lots 168 and 169 in 1944 from Meinig’s grantee. In 1945 The Beading Trust Company conveyed all of the land, acquired by the. sale, including lots 152, 40 and 41 to Berks Home Builders Inc., the present owner. We will refer to this appellee as Berks. Gregg Avenue had not been accepted by the city as a public street and the conveyance included the road bed of
 
 *361
 
 that, as well as other streets indicated on the recorded plot.
 

 In April 1946 Consumers Gas Company while digging a trench for a gas line broke the terra cotta drain pipe in Gregg Avenue, and the City of Reading, in subsequently laying a water main in the street disturbed and interfered with the proper functioning of the french drain in the highway. In 1946 Berks, in the development of their land, built dwelling houses on lots 40 and 41 fronting on the south line of Gregg Avenue. It was contended by plaintiffs that Berks in bringing Gregg Avenue to grade and rolling the surface had completely closed the french drain in the street and rendered it wholly inoperative as a means of carrying the effluent of the septic tank across Gregg Avenue. Plaintiffs in this action prayed for a mandatory injunction compelling the defendants to reestablish, in good working order, plaintiffs’ sewage system. The lower court affirmed the findings and conclusions of the chancellor, and, in refusing injunctive relief, dismissed the bill as to all defendants. Plaintiffs contend that the facts establish an implied easement in law in favor of their lots for sewage disposal through the lands of Berks as the servient tenement.
 

 When E. Richard Meinig constructed the sewage system to serve the dwelling house, he imposed a quasi easement for the purpose on his other land through which the pipes and drains conveyed the effluent from the septic tank. But when the plaintiffs bought lots 168 and 169 in 1944, title to other parts of the tract, including all of the land formerly subjected to the quasi easement by Meinig, was in The Reading Trust Company by virtue of a sheriff’s deed, on foreclosure of its mortgage. There was no reference to the sewage disposal system nor any easement in any of the conveyances in the chain of title of either the plaintiffs or of the defendant Berks. The easement contended for by appel
 
 *362
 
 lants therefore must have existed by implication, if at all. We had occasion to refer to the tests which determine an implied easement, in
 
 Heffley v. Lohr,
 
 149 Pa. Superior Ct. 586, 27 A. 2d 275 and we quoted the well-settled rule “that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law.” Easements by implication require no deed or writing to support them and they pass by a conveyance of the estates to which they are appurtenant.
 
 Lauderbach-Zerby Co. v. Lewis,
 
 283 Pa. 250, 129 A. 83. But under all of the authorities an implied easement can arise only where the servitude is of a permanent nature, continuous, and sufficiently
 
 apparent
 
 to give notice of its existence. A use must be apparent to be the subject of an implied easement on the severance of ownership. Such use however need not be plainly visible; it is apparent in law when it may be discovered upon reasonable inspection
 
 (Kieffer v. Imhoff,
 
 26 Pa. 138; 28 C. J. S., Easements, §33; 17 Am. Jur., Easements, §11); in the case of drains, by one ordinarily conversant with the subject. Annotation, 58 A. L. R. 818.
 

 The question before the lower court on this phase of the case was whether Berks was put on notice by indicia of the servitude on the land at the time it acquired title. The burden of establishing the existence of the easement by proof that the use was apparent, was on the plaintiffs.
 
 Becker v. Rittenhouse,
 
 297 Pa. 317, 147 A. 51.
 

 A capped cast iron vent pipe, five inches in diameter which had been installed over the trap in the drain pipe between the house and the septic tank extended upright about one foot above the surface of the ground at a
 
 *363
 
 point on lot 169, two feet eight inches west of the west line of lot 152. This vent pipe was in a line of shrubbery along the east line of lot 169, where it might easily have escaped notice by one intent upon examining adjoining-land. Moreover, as the court also observed, the vent pipe, even if it had been observed, would have indicated to one “ordinarily conversant with the subject” a septic tank and drains running south of the vent wholly on plaintiffs’ land, just as logically as on the neighboring-lands to the east. The only other evidence on the ground which plaintiffs contend gave notice of the existence of an easement was the site of the old well at the end of the drain on a line between lots 40 and 41, south of Gregg Avenue. The existence of the well was not obvious and had not been observed by Berks’ surveyor prior to the purchase of the land. In fact no well existed. It had been completely filled up with cinders and debris some years before the drain was connected with it, and was only partially covered by an old wooden top, among weeds and brush. There was no odor or other evidence indicating that the old well was the terminal of the drains of a sewage disposal system. Upon findings to the above effect, on evidence as to which there is little dispute, the lower court concluded that neither the vent pipe nor the well disclosed the disposal system as an apparent servitude imposed on Berks’ land.
 

 It seems clear also that plaintiffs are barred from relief on another ground. If there ever was an implied easement on neighboring land in favor of lots 168 and 169, the easement was wiped out by the foreclosure of the mortgage by The Beading Trust Company in 1938, before the plaintiffs acquired title to the lots. Meinig constructed the disposal system
 
 after
 
 he gave the mortgage. The security of a mortgage cannot be impaired by an easement subsequently imposed on the land without the consent of the mortgagee.
 
 Dexter et al. v. Penna. Power Co.,
 
 127 Pa. Superior Ct. 419, 193 A. 94. The
 
 *364
 
 title of the Trust Company which it later conveyed to Berks related back to the date of the mortgage and the foreclosure therefore defeated all interests, including easements, acquired or created subsequent to that date.
 

 This conclusion is not affected by the release of lots 168 and 169 from the lien of the mortgage by The Reading Trust Company in 1937. The language of a habendum clause in the release “To have and to hold the same with the appurtenances unto the said E. Richard Meinig, his heirs, executors, administrators and assigns, forever freed, exonerated and discharged of and from the lien of said mortgage and every part thereof”, may not be construed as a recognition of the existence of the quasi easement created by Meinig after he gave the mortgage and as a conveyance to him of a servitude on other land. The easement is not referred to in the release and there is no evidence that the mortgagee or his assignee ever had notice of the existence of the sewage disposal system, much less its location, on the land. A similar factual situation was presented in
 
 Harlow v. Whitcher,
 
 136 Mass. 553. We agree with the lower court that if the name of the present mortgagor be substituted, the following quotation from the opinion in that case supplies a complete answer to appellant’s contention as to the legal effect of the release: “While [Meinig], as mortgagor in possession, occupied the Avhole premises, lie might occupy them in any way he saw fit, practically giving to one parcel an easement and imposing a servitude upon another. But when one of these parcels is released to him by the mortgagee, it is not therefore to be deemed that the mortgagee has assented that, in favor of it, a servitude shall be imposed upon the other parcel. The release of certain described premises by the mortgagee ought not to be construed as a conveyance to the releasee of rights in the remainder of the estate, Avhich, Avithout the consent of the mortgagee, the releasee
 
 *365
 
 had seen lit to attach thereto.” Here, in the absence oí evidence of other intent, the release did no more than to restore the lots released to their original unencumbered condition.
 

 There is no merit in other questions raised by the appellants.
 

 Decree affirmed.