## Phillips et al. v. Smelka et ux.

*Bryan, Joslin & Bryan,* for plaintiffs.

*March, Spaeder, Baur & Spaeder,* for defendants.

EVANS, P. J., March 7, 1951.—This matter is before us on a bill in equity seeking an injunction and damages.

From the pleadings and testimony we make the following

### Findings of Fact

1. From 1920 to February 14, 1945, F. John Whitehill and James S. Whitehill owned as a single tract of land in North East Township two farms which now are, respectively, the properties of plaintiffs and defendants. Plaintiffs' land adjoins and lies to the west of the land of defendants.

2. The two farms are bounded on the south by a 16-foot black-top road known as the Middle Road, having a right of way of about 50 feet and slight drainage ditches on both sides.

3. As of February 14, 1945, defendants, with rights and obligations in respect to this suit, became the owners of the east portion of this tract.

4. As of February 2, 1946, plaintiffs, with rights and obligations in respect to this suit, became the owners of the west portion of this tract.

5. Crossing under the Middle Road and onto the property of defendants is a culvert through which flows water draining from higher lands to the south and from the ditches along Middle Road.

6. Since about 1938 there has been on defendants' tract a cement basin into which flowed all of the water draining from the south. From this basin emerges a four-inch tile conduit which runs in a northwesterly direction approximately 160 feet to defendants' west property line, and a further 160 feet on plaintiffs' property, to a barrel. From this barrel, in a northerly direction, the tile conduit continues to the north and off plaintiffs' land.

7. This conduit, when operating properly, is adequate for drainage of the water for which its construction was intended excepting as noted in finding no. 8.

8. At times during flash floods or excessive rains this conduit is of insufficient size to function as fully as intended.

9. During such conditions the excess flow of water is in a northerly direction and onto defendants' property from whence, in case of great excesses, a portion of such overflow extends onto and upon the land of plaintiffs.

10. For proper functioning, this conduit must be cleaned of silt and roots approximately every two years.

11. Prior to the spring of 1947 when it became plugged, neither plaintiffs nor defendants cleaned this conduit after becoming owners of their respective properties.

12. As a result of this condition all the water coming from the north and through the culvert under the Middle Road flowed upon defendants' land.

13. Defendants erected an earthen dam or ledge from a point of approximately 140 feet on their own land to their west property line for the purpose of directing all of the water onto plaintiff's property at a point near plaintiffs' cherry orchard. The land in and around the cherry orchard became soggy with excessive moisture and at times was completely covered with water.

14. Plaintiffs discovered the damage to their land in time to minimize or completely obviate loss.

15. The excessive water so directed (finding no. 13) caused 30 of plaintiffs' sweet cherry trees to die. These trees were of ages varying from 15 to 30 years and of healthy, fruit-bearing varieties prior to 1947.

16. The value of each tree was $75 and the loss suffered by plaintiffs is in the total amount of $2,250.

17. The cost of repair would have been insignificant and grossly disproportionate to the loss.

18. Plaintiffs were negligent in failing to minimize their loss.

19. The tile drain (finding no. 6) does not follow the course through which the water would have flowed because of natural contours in the land, but the drain directs the water by artificial means along a different course.

20. The drain was for the exclusive benefit of defendants' property.

## Discussion

It is admitted by both parties that when the Whitehills sold the property at the times hereinbefore set forth they, by implication, created an easement by which defendants acquired the legal right to have the water entering their land from the culvert carried through the tile drain on the land of plaintiffs. See Phillips v. Phillips, 48 Pa. 178; Heffley v. Lohr, 149 Pa. Superior Ct. 586; Baslego v. Kruleskie et ux., 162 Pa. Superior Ct. 174. This raises the first question as to the responsibility for maintenance of the drain for the purposes intended.

As a general rule, the owner of land subject to an easement of a nature which requires the maintenance of means for its enjoyment is not bound to keep such means in repair or to sustain any expense in maintaining them in a proper condition: 17 Am. Jur. Easements, §108.

Those entitled to the continuance of this easement have the right and the obligation to enter upon the lands of the servient estate for the purpose of making any necessary repairs: Carpenter v. Masters, 26 Luz. 135; A. L. I. Restatement of the Law of Property, Servitude, §485, comment b. This rule may not apply if, under particular circumstances, the owner of the servient estate may also derive a benefit from the use of the easement. Here no such benefit exists. The Middle Road, bounding the south line of plaintiffs' property, is approximately 400 feet from the spot where the excess water accumulated and was of sufficient height to prevent any drainage from property to the south. Were there no water flowing through the culvert under the Middle Road there would have been no excess water in and around the cherry orchard so as to cause the damage which was done. There was considerable testimony as to where the water would normally have flowed from the culvert, but we are convinced that all of it, except in very unusual conditions, would have flowed onto defendants' property and there remained. This is proved by the testimony of the former owner to the effect that prior to the sale of the land to defendants a vineyard located thereon was destroyed by an excess amount of water from this source. This is further proved by the fact that defendants found it necessary to erect an embankment 140 feet in length and 18 inches in height to direct the water from their land onto plaintiffs' property. The testimony shows that the water so deflected at times ran in a stream 16 inches wide and four inches deep.

By this operation defendants were able to keep their own land in condition for planting and they reset a grape vineyard in that portion of their farm which, prior to the erection of the mound to deflect water, was not fit for that purpose. We must, therefore, conclude that the duty of repairing the tile drain on plaintiffs'

property rests upon defendants unless, as an alternative, they elect to establish such a drain on their own property. We must also conclude that the diverting of water to the land of plaintiffs by the erection of embankments must be discontinued.

Our next problem concerns the liability of defendants for the damage they caused to plaintiffs' fruit trees. In A. L. I. Restatement of the Law of Torts, §918(2), the following rule of law is recited:

"A person is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended such harm or adverted to it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of such harm intentionally or headlessly failed to protect his own interests."

The reason for such rule is thereafter stated to be that such damage is in part the result of the injured person's lack of care and public policy requires that persons should be discouraged from wasting their resources, both physical and economic. This is the law as determined in Thompson v. DeLong, 267 Pa. 212, wherein the court holds: "One cannot stand idly by and see his property destroyed by water, if by a reasonable effort on his part the injury may be avoided." In this case plaintiffs, with comparatively little effort and at a minor expense, could have cleaned the drains or opened a ditch to minimize their loss, while, at the same time, bringing this action at an earlier date to compel defendants to assume and perform their legal obligation with respect to maintaining their easement in repair. They would have been allowed, as part of such action, reasonable compensation for the labor and expense involved. They chose, however, after slight and ineffectual attempts to protect their property, to ignore the condition and attend to other pressing duties. They knew and had been warned of the probable results

from excessive water around the roots of their fruit trees and must bear the loss which, with a reasonable amount of care and prudence, they could have avoided.

## Conclusions of Law

1. Defendants have the right and obligation to own, maintain and repair the tile conduit on plaintiffs' property through which water from plaintiffs' catch basin is drained.

2. Defendants have no right to divert the overflow of water which at times courses upon their own lands from the cement basin located near the south boundary of their property.

3. Defendants should be required to hereafter maintain in good repair the four-inch tile conduit running from the cement basin onto and upon plaintiffs' property, and for that purpose defendants have the right of entry upon plaintiffs' property.

4. Defendants should remove all embankments or other means by which water is deflected from their land upon that of plaintiffs.

5. Defendants should not be liable to plaintiffs for damage suffered heretofore because of their failure to maintain the tile conduit or from causing water to flow upon plaintiffs' land.

6. Defendants should pay the costs.

## Decree

And now, to wit, March 7, 1951, it is ordered, adjudged and decreed:

1. Defendants shall maintain in good repair the four-inch tile conduit running from a cement basin on their land to and onto the land of plaintiffs, and for that purpose defendants have the right of entry upon plaintiffs' land.

2. Defendants shall discontinue the diverting of water from their land to the land of plaintiffs.

3. Defendants shall remove all embankments or other means by which water is deflected from their land to and upon the land of plaintiffs.

4. Defendants are not liable to plaintiffs for damage suffered heretofore because of their failure to maintain the tile conduit in good repair or from causing water to flow upon plaintiffs' land.

5. Defendants shall pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi and to give notice to the parties or their counsel of record, of the entry of the decree, and, if no exceptions are filed within 10 days thereafter, the decree shall be entered as the final decree, by the prothonotary as of course.