## Bowley v. Koze

*Robert Young*, for plaintiffs.

*Thomas Calnan, Jr.*, for defendant.

KOCH, J., September 18, 1962.—Plaintiffs, residents of a rural area in Lehigh County, instituted this action in equity to restrain defendant from "turning off the

supply of their water" to their home. After the filing of an answer, the matter was set down for hearing. On that occasion it appeared that defendant had already closed a valve thus depriving plaintiffs of a water supply. At the conclusion of the hearing we entered a preliminary order enjoining defendant from turning off the water supply and also ordering him to reinstate the service.

Based upon the testimony and the admissions in the pleadings we make the following

### Findings of Fact

1. Plaintiffs, Kenneth H. Bowley and Eleanor D. Bowley, are husband and wife and reside at R.D. No. 1, Center Valley, Lehigh County, Pa.

2. Defendant, Donald R. Koze, is an individual also residing at R.D. No. 1, Center Valley, Lehigh County, Pa.

3. George W. Koze, now deceased, and Anna M. Koze, his wife, were in 1943, the owners in fee simple of approximately 37.5 acres of land located at R.D. No. 1, Center Valley, Lehigh County, Pennsylvania, having acquired their title by grant of two deeds as recorded in Deed Book Volume 608 at page 318 and Volume 639 at page 106, as contained in the office for the recording of deeds at Allentown, Lehigh County, Pennsylvania.

4. The above-mentioned property primarily consisted of farm land and was bisected by a two-lane macadam highway known as the Lanark-Vera Cruz Highway. When originally purchased by George M. Koze and his wife, Anna, the property contained a large farmhouse, barn, and garage buildings.

5. During the years 1947 and 1948, the above-mentioned George M. Koze constructed a single family dwelling across the Lanark-Vera Cruz Highway from

the original farm-house buildings. In order to supply water to this new house, a pipeline was placed in the ground running from the well at the original farm-house, across the road, and into the new home. Thus, the farmhouse well in this manner furnished the water supply for both houses.

6. Defendant, Donald R. Koze, purchased 3.3724 acres from his father and mother, George W. Koze and Anna M. Koze, on October 3, 1950, as recorded in Deed Book Volume 749 at page 56 in the office of the Recorder of Deeds at Allentown, Lehigh County, Pa. This land was also across the Lanark-Vera Cruz Highway from the original farmhouse and situated approximately three hundred feet to the west of the home built by the above-mentioned George W. Koze in 1947-48.

7. Defendant then constructed his own single unit family home and drilled a well on his property in order to secure water for his home.

8. Plaintiffs, on January 10, 1955, then purchased the home which had been built by George W. Koze in 1947-48 together with 3.5474 acres of land. The deed to this property is recorded in Deed Book Volume 842 at page 32, as recorded in the office of the Recorder of Deeds at Allentown, Lehigh County, Pa.

9. Continuously from the erection of the house by George W. Koze in 1947-48 until its purchase early in 1955 by plaintiffs, this home received its water supply from the farmhouse well and through the pipeline laid in 1947-48 by George W. Koze, father of the wife-plaintiff.

10. The deed of conveyance between George W. Koze and Anna M. Koze, his wife, to plaintiffs contains the following grant:

"TOGETHER, with all and singular the improvements, ways, waters, water-courses, rights, liberties,

privileges, hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said parties of the first part, in law, equity or otherwise, however, in and to the same and every part thereof."

11. During the year 1956, the water table of the entire Saucon Valley, in which all of the above-mentioned tracts of land are located, was considerably lowered, apparently by the operations of the New Jersey Zinc Company, and the farmhouse well and the private well of the defendant went dry. The well of defendant went dry two or three months after the farmhouse well.

12. The New Jersey Zinc Company placed two 1,000-gallon tanks next to each of the three houses after the water table dropped.

13. That later in 1956, defendant connected his system to a creek running through the property and commenced to supply creek water to all three houses to November 1960.

14. In November 1960, defendant, at his own expense, dug the farmhouse well from a depth of 200 feet to a depth of 321 feet where he struck water.

15. That the water system operated by defendant which has served plaintiff's water, is a power-forced feed system involving the use of an electric submersible pump and an extended system of pipe line.

16. That the cost of deepening the original farmhouse well and the supplying of a new pump therefor was done at a cost to defendant of $2,600.

17. That plaintiffs could have a well dug and have water upon their own property at a cost of $1,931.25.

18. That plaintiffs have never contributed anything towards the support, maintenance and repair of the

system which supplies them with water when the same was operated by George W. Koze or since the same was operated by defendant herein.

19. That the farmhouse well, if it existed at its former depth of 200 feet, would be dry, useless and of no benefit to anyone.

20. That defendant's home under the present situation receives inadequate water and inadequate pressure.

## Discussion

It is undenied that the controversy before us had its inception with the lowering of the water table in 1956, an act over which neither of the parties had control. Previous to this event it is clear that the farmhouse well on the property now owned by defendant was adequate to supply the needs of the premises now owned by plaintiffs. In our judgment the acts and the intention of defendant's father were such that an easement was created. Plaintiffs' rights must, then, be examined in the light of the general definition of easements. 12 P. L. Encyc., Easements §1 states:

"An easement is a liberty, privilege or advantage which one may have in the lands of another without profit. It cannot be an estate or interest in the land itself or a right to any part of it, but consists in rights of enjoyment in or issuing out of another's land. It has also been described as a right to use another's land for a precise and definite purpose not inconsistent with the owner's general right of property."

Defendant concedes that if an easement is found to exist, the court could properly order defendant not to interfere with any pipe lines or valves on defendant's premises for this is the type of servitude which is contemplated in the law of easements. An example of such a situation is found in Kloock v. Rusnack, 164 Pa. Superior Ct. 67. In that case Caroline Johnson deeded

a one-acre tract to the trustees of a church upon which stood a single family dwelling house whose water was supplied by a spring located across a roadway, which divided her 80-acre farm in half. She retained ownership of the balance of the farm. She later conveyed the portion of her farm upon which the spring was located to Rusnack who materially diminished the flow of water to the dwelling house, below normal requirements. The Superior Court held that the water rights, having passed to the church as an appurtenance of the one-acre lot, inured to the benefit of the successors in title, regardless of the fact that no reference thereto was contained in the deed. At page 72, Judge Hirt said:

". . . It is a well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law: Heffley v. Lohr, 149 Pa. Superior Ct. 586, 27 A. 2d 275. And when an easement exists it is not important that it is not referred to in a particular deed or deeds in the chain of title. Ozehoski et al. v. Scranton Water Co., 157 Pa. Superior Ct. 437, 440, 43 A. 2d 601."

The facts as we find them indicate that as a result of the lowering of the water table defendant, at his own cost, installed a power forced feed system involving the use of an electric submersible pump on an extended system of pipe line. None of his acts can be regarded as diminishing the flow of water or as interfering with the easement rights created. Plaintiffs were entitled to the natural flow from the well as it existed before it was deepened and plaintiffs' rights can rise no higher than the use of the defendant's land for this purpose.

What plaintiffs request is that defendant be ordered to perpetually engage in the supplying of water. While it is regrettable that defendant has refused to negotiate on a contract basis to supply water to plaintiffs, the court lacks authority to affirmatively require defendant to enter into a contract. Plaintiffs have failed to call to our attention any decision which authorizes the court to grant such relief: Geissel v. Supplee, 95 Pa. Superior Ct. 358, called to our attention by plaintiffs, involved the arbitrary cutting off of the water supply and the defendant was restrained from this act. In the case at bar if defendant were restrained from a cutting off of water, plaintiffs would still be without a supply since pumping alone, not contemplated by the easement, would be necessary.

In Heffley v. Lohr, 149 Pa. Superior Ct. 586, page 592, the court said:

"Though defendant's land is the servient estate, plaintiff may not subject it to undue burdens amounting to an abuse of the privileges flowing from the easements. The intent of the decree as to the use of the water, is that defendant is first entitled to a continuous supply, reasonably adequate for the service of the mansion house, the garage and for the maintenance of his grounds. Plaintiff's rights to water are secondary to that extent."

Plaintiffs also call to our attention Yezioro v. North Fayette County Municipal Authority, 193 Pa. Superior Ct. 271, where a final decree enjoining and restraining a municipal authority from discontinuing water service to several consumers was upheld. That decision involved a question of abandonment of service under the Municipal Authorities Act and in no way is factually similar to the case before us where rights under an easement are in issue.

Even though we cannot grant the relief requested, we shall retain the bill for the purpose of protecting

plaintiffs' right to a natural flow of water in the event that the water table again should be such that pumping is not required.

### Conclusions of Law

1. George W. Koze, before his death, subjected his farmhouse to an open, visible, permanent and continuous service or easement in favor of the home now owned by plaintiffs.

2. Defendant, Donald Koze, was fully aware of the common water system and when he purchased the father's house, said defendant took title subject to this easement running with the land in favor of plaintiffs' house.

3. The appurtenance clause contained in George Koze's deed to his daughter conveyed the right to the daughter and her successors in interest to receive water from the same supply used for the father's house.

4. That a court of equity is without power to order defendant to supply water service to plaintiffs by the process of pumping which was installed by defendant.

5. That, under the facts, plaintiffs are not entitled to equitable relief nor an injunction against defendant to restrain him from turning off their water supply.

6. The prayer of plaintiffs' complaint must be denied.

7. The following decree nisi will be entered:

And now, September 18, 1962, it is ordered, adjudged and decreed that the preliminary injunction entered on June 5, 1961, be dissolved and the prayer of plaintiffs is denied, but the bill is retained pending further action in the event that defendant should interfere with the natural flow of water from defendant's land to that of plaintiffs. Costs to be paid by plaintiffs.

And now, September 18, 1962, it is ordered that the above adjudication be entered in the office of the pro-

thonotary and notice of its entry be given respective counsel and that if no exceptions are filed within 20 days, the decree nisi shall be entered as the final decree in the case.