MOTEL 6, INC., a Delaware Corporation, Appellant,

v.

Ira Vernon PFILE, a/k/a I. Vernon Pfile and Virginia V. Pfile, a/k/a M. Virginia Pfile, Appellees.

No. 82–5674.

United States Court of Appeals, Third Circuit.

Argued June 21, 1983.

Decided Sept. 30, 1983.

Rehearing Denied Oct. 25, 1983.

McCreary, John N. Scales, Scales, DeRose & Murray, Greensburg, Pa., for appellees.

Before GIBBONS and BECKER, Circuit Judges and LACEY *, District Judge.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal arises out of a diversity suit seeking recognition under Pennsylvania law of an implied easement of access to a sewage treatment plant. Appellant Motel 6, a Delaware corporation, owns a ninety-five unit motel in Belle Vernon, Pennsylvania, which it purchased from defendants Ira Vernon Pfile and Virginia V. Pfile. Motel 6 is unable to operate the motel because its only sewer connection is to a sewage plant owned and operated by the Pfiles, who refuse to service the motel.

Motel 6 originally built and operated the motel under a long-term lease agreement with the Pfiles, under which the Pfiles agreed to provide sewage service. After the motel was partly destroyed by fire, Motel 6 purchased the motel from the Pfiles and rebuilt it at a cost in excess of two million dollars. The purchase agreement, however, did not provide for sewage service. Alleging that no other sewer connection was available to the motel, Motel 6 sought a permanent injunction in the district court requiring the Pfiles to furnish sewage treatment. After trial, the court denied the injunction. Because we conclude that the district court misapplied the Pennsylvania law of implied easements, and that the record establishes that Motel 6 is entitled to relief as a matter of law, we will reverse. We will also remand for further proceedings to determine the compensation to which the Pfiles are entitled for access to their sewage treatment plant.

I.

The basic facts, most of which are uncontradicted, are set forth in the district court's findings of fact. In 1971 the Pfiles,

Walter T. McGough (argued), Diane W. Perer, Kenneth C. Kettering, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., A. Barry Cappello, Peter J. Bezek, Goux, Romasanta & Cappello, Santa Barbara, Cal., for appellant.

John M. Campfield (argued), William S. Ferraro, Ober, Campfield, Ferraro &

* Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

who own several tracts of land and buildings in Belle Vernon, entered into an agreement with Motel 6. Motel 6 agreed to build a 95-unit motel on one of the Belle Vernon tracts, and to lease the newly built motel from the Pfiles for 65 years. Both the lease and the construction contract made the Pfiles solely responsible for providing sewage facilities to the motel. In the course of construction, sewage pipes were laid from the motel to the property line, which were subsequently connected to the Pfiles' sewage treatment plant 1,200 feet north of the motel. The connections were made across intervening tracts owned by the Pfiles.[1] The sewage plant serviced other establishments situated on land leased from the Pfiles and continues to serve those establishments.

Motel 6 operated the motel under the lease until December 31, 1977. During that time, the Pfiles provided sewage service as required by the lease. On that date, and again on January 2, 1978, accidental fires severely damaged the motel and rendered it uninhabitable. Under an agreement dated May 8, 1979, the parties agreed to terminate the lease and Motel 6 agreed to purchase the damaged motel and the land on which it sat.[2] The purchase was completed by delivery of a deed, dated and recorded on May 16, 1979. The matter of sewage disposal was never raised in the negotiations concerning the agreement to purchase, and it is not mentioned in either the agreement of sale or the deed.

In September 1979, while the motel was being rebuilt, Mr. Pfile informed Motel 6 that the transmittal of sewage from the motel to the Pfiles' sewage plant was continuing without permission, and allegedly without legal authority or right. The Pfiles subsequently demanded that Motel 6 purchase the plant for $250,000 and agree to service the other properties connected with the plant in perpetuity free of charge; Pfile threatened to cut off the motel's sewage service if an agreement to that effect was not reached. Motel 6 offered to pay a reasonable fee for continued use of Pfiles' plant, but the parties could not reach an agreement.

Motel 6 began operating the reconstructed motel on May 14, 1980. The Pfiles provided sewage service until the time of the trial in January 1981.[3] Service was discontinued in June of 1981, and has not been restored. The motel remains unoccupied. Labor troubles have plagued the motel, and have been a factor in its inability to operate. The motel cannot, however, be operated without sewage services.

Motel 6 applied to the Township of Rostraver for permission to construct a sewage treatment plant on its property, but the Township refused to grant the application because the Pfiles' sewage treatment plant had sufficient capacity to handle the motel's sewage requirements.[4] The closest public sewer line is two miles from the motel. In order to connect with this public system, Motel 6 would have to purchase easements over intervening land and lay pipe at a substantial cost, which was not quantified in the record.[5]

1. At some point between the execution of the lease agreement and this lawsuit, the Pfiles sold some of the land between the motel and the sewage treatment plant.

2. The Pfiles also assigned their insurance claim to Motel 6.

3. Until that time, the Pfiles had not billed Motel 6 for services and Motel 6 had not paid anything.

4. The tract on which the motel is located is not large enough to permit installation of a septic system.

5. As we have noted, the foregoing facts, all encompassed within the district court's findings, are not in dispute. The court did make one finding, which it characterized as a conclusion of law, which is in dispute:

> An implied easement to defendants' treatment facility is not necessary to the beneficial use of the plaintiff's property, plaintiff's application for a permit to operate its own treatment facility being evidence that it is capable of serving its own needs, and further there being no evidence to indicate it could not use the Rostraver Township municipal system.

Although this finding is difficult to understand, under the applicable law its validity *vel non* does not effect the outcome of this appeal.

The district court's discussion of the applicable law began with a reference to the doctrine of mutual mistake. The court stated that, although the failure of the parties to include in the agreement of sale a representation required by state law as to availability of sewage service in the agreement of sale was a result of mutual mistake,[6] the failure to provide that defendants would provide sewage treatment services for plaintiff was not a result of mutual mistake.

The district court made three other conclusions of law. First, the court wrote that "[a] servitude to defendants' sewage treatment facility was not continuous but depended on the need of the motel for the services, and was not self-acting but depended on the willingness of defendants to operate the facility." Second, the district court held that:

[b]ecause defendant did not intend to create a permanent servitude to their sewage treatment facility in favor of that part of the property leased to plaintiff and because an implied easement is not necessary to the beneficial use of plaintiff's property, and because the servitude was not continuous and self-acting, plaintiff has not established its right to an easement by implication to defendants' treatment facility.

Finally, the district court concluded that defendants were under no other legal duty to provide plaintiff with sewage treatment services. The court therefore entered, on February 18, 1981, an order denying injunctive relief.[7]

**6.** The representation is required by § 7.1 of the Pennsylvania Sewage Facilities Act, Pa.Stat. Ann. tit. 35, § 750.7a(a) (Purdon 1977). Section 750.7a(a) provides:

Every contract for the sale of a lot as defined in section 2 for which there is no currently existing community sewage system available shall contain a statement in the contract clearly indicating to the buyer that there is no community sewage system available and that a permit for an individual sewage system will have to be obtained pursuant to section 7. The contract shall also clearly state that the buyer should contact the local agency charged with administering this act before signing the contract to determine the procedure and requirements for obtaining a permit for an individual sewage system if one has not already been obtained. . . .

Also germane is § 750.7a(b), which provides:

Any contract for the sale of a lot which does not conform to the requirements of subsection (a) shall not be enforceable by the seller against the buyer. Any term of such contract purporting to waive the rights of the buyer to the disclosures required in subsection (a) shall be void.

**7.** The district court failed, however, to enter a final order on a separate document directing the entry of judgment as is required by Fed.R. Civ.P. 58. Thus, the case was still alive on the docket when, eleven months later, Motel 6, through new counsel, moved to reopen the record to introduce additional evidence. The proffer of additional facts was essentially as follows. First, Motel 6 offered to prove that the Pfiles had repeatedly represented to government authorities that their sewage treatment plant would serve Motel 6, that their permit to operate the plant required them to do so, and

that the Pennsylvania Department of Environmental Resources sewage treatment plant permit approval under the Pennsylvania Clean Streams Law was conditioned upon providing service to Motel 6. Second, Motel 6 offered to demonstrate again that the district court had wrongly concluded that the motel's application to build its own sewage plant would have been granted by the Township if the authorities had been informed of Pfiles' threat to withdraw sewage services. The specific proffer was of evidence that, subsequent to the district court's order denying the easement, the Township authorities had rejected a reapplication for a sewage permit, in spite of the fact that they knew of the district court's order, on the basis that the statutory mandate forbade construction of a new plant so long as the Pfiles' plant remained in existence. Third, Motel 6 offered to demonstrate that the cost of constructing a two-mile sewer pipeline to the municipal plant would be prohibitive, even assuming that the necessary rights of way could be acquired at any price. Finally, Motel 6 offered to demonstrate that on June 23, 1981 (after the district court's order), the Pfiles' plant ceased to treat sewage from Motel 6, which forced its shutdown and rendered it completely empty and unusable. Defendants never denied any of these facts, even though they submitted two separate briefs in opposition to Motel 6's proffer of the evidence.

In a memorandum dated October 5, 1982, the district court acknowledged that Rule 58 had not been observed and that the February order therefore was not a "final judgment." The court nevertheless declined to hear the proffered evidence, despite its power to do so, relying on several factors. First, the court noted the delay of one year from the date of trial in

In its brief, Motel 6 urges five alternative theories supporting its entitlement to permanent injunctive relief. Those theories are easement by necessity, easement by implication, easement by estoppel, reformation of the agreement of sale to provide for continued sewage service to the motel for a reasonable fee, and relief under § 7.1 of the Pennsylvania Sewage Facilities Act, Pa. Stat.Ann. tit. 35, § 750.7a (Purdon 1977). Because we find that Motel 6 is entitled on this record to judgment on the basis of an implied easement, we need not discuss the other legal theories.[8]

## II

### A.

In the briefs filed on this appeal, both parties cited *Spaeder v. Tabak,* 170 Pa.Super. 392, 395, 85 A.2d 654, 656 (1952), as stating the Pennsylvania law on implied easements.[9] The district court also appears to have relied on *Spaeder,* although it cited no authority. In *Spaeder,* the court formulated the following test:

> To establish an easement by implication on the severance of the unity of ownership in an estate there must be (1)

a separation of the title, (2) such continuous and obvious use before the separation as to show an intention to make the alleged easement permanent, (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting.

170 Pa.Super. at 395, 85 A.2d at 656, (quoting *DePietro v. Triano,* 167 Pa.Super. 29, 31–32, 74 A.2d 710, 711 (1950)); *see also Becker v. Rittenhouse,* 297 Pa. 317, 319, 147 A. 51, 53 (1929).

More recent Pennsylvania authority, however, has rejected the apparent requirement of the *Spaeder* test that there be both necessity and continuous and obvious use in order to imply an easement. In *Burns Manufacturing Co. v. Boehm,* 467 Pa. 307, 356 A.2d 763 (1976), the Pennsylvania Supreme Court stated "[e]asements by implied reservation are to be distinguished from easements which are implied on the grounds of necessity.... Easements by implied reservation ... are based on the theory that continuous use of a permanent right of way gives rise to the implication that the

---

submitting the proposed additional evidence, and its belief that most of the proposed evidence was available at the time of trial. Second, the court reiterated that, because there was no legal obligation on the part of the Pfiles to provide sewer service to Motel 6, the fact that the motel could not secure alternative service, and that this inability rendered its motel worthless, was irrelevant. The court also observed that reopening the record would burden Motel 6 and its witnesses, including representatives of the Pennsylvania Department of Environmental Resources, Westmoreland County and Rostraver Township, and reasoned that, because it represented an attempt to relitigate a case that had already been decided, the principle of judicial economy counseled against granting the motion. The court concluded that Motel 6 would not be unduly prejudiced by the refusal to take additional testimony, inasmuch as the testimony had been available at trial and would not at all events change the court's findings as to the legal obligations of the parties. It therefore denied the motion to reopen the record and entered final judgment for the Pfiles.

**8.** Alternatively, Motel 6 contends that the district court abused its discretion in declining to reopen the record to hear the proffered evi-

dence. If the law did not require that judgment be entered for Motel 6 on the basis of the existing record, we would plainly be obliged to vacate the district court's final judgment and reopen the record.

**9.** The law of implied easements, whatever specific categories may be invoked, is ultimately justified in terms of the imputed intention of the parties to the conveyance. *See Spaeder v. Tabak,* 170 Pa.Super. 392, 396, 85 A.2d 654, 656 (1952) ("Whether an easement by implication arises depends on the intent of the parties...."); *Thomas v. Deliere,* 241 Pa.Super. 1, 359 A.2d 398, 400 n. 2 (1976) (Restatement of Property "emphasizes a balancing approach designed to ascertain the actual or imputed intention of the parties."); *Burns Mfg. Co. v. Boehm,* 467 Pa. 307, 314 n. 4, 356 A.2d 763, 767 n. 4 (1976) (Implied easements are based on theory that "continuous use ... gives rise to the implication that the parties intended that such use would continue."). The implication of intent in this area has been described as a fiction "genuinely rooted in considerations of public policy." 3 R. Powell, *The Law of Real Property* ¶ 410, at 34–60 (P. Rohan ed. 1981).

parties intended that such use would continue, notwithstanding the absence of necessity for the use." *Id.* at 314 n. 4, 356 A.2d at 767 n. 4. Although *Burns* involved an easement *retained* upon sale of part of the land, as opposed to an easement *created* upon passage of the part of land benefited by the easement, the court in *Burns* stated that this distinction is irrelevant. *Id.* at 314, 356 A.2d at 767 (quoting *Tosh v. Witts,* 381 Pa. 255, 261, 113 A.2d 226, 228 (1955)).

There is thus conflicting Pennsylvania authority on the question whether necessity is required to imply an easement. *See Schwoyer v. Smith,* 388 Pa. 637, 643, 131 A.2d 385, 389 (1957); *Thomas v. Deliere,* 241 Pa.Super. 1, 359 A.2d 398, 400 n. 2 (1976) ("It is well-established that evidence of long continued prior use is, in itself, insufficient to justify the implication of an easement on severance"). This confusion is compounded by the most recent Pennsylvania superior court decisions on the implication of easements, which have applied the test formulated in Section 476 of the Restatement of Property (1944). The Restatement test requires consideration of necessity as one element in a balancing test. *See Flaherty v. DeHaven,* 302 Pa.Super. 412, 419–20, 448 A.2d 1108, 1112 (1982); *Ecenbarger v. Lesoine,* 293 Pa.Super. 230, 239–40, 438 A.2d 969, 973 (1980).[10] All of the tests look for circumstances that evidence the intent of the parties.[11] In *Flaherty,* the most recent

Pennsylvania case on the subject, the court stated "as the degree of necessity decreases, the need to refer to other factors suggestive of an intent to create an easement increases substantially." 302 Pa.Super. at 419, 448 A.2d at 1112. Necessity under this test is apparently not an absolute requirement, but one of several indicia of intent.

Given the manifest lack of clarity in the Pennsylvania caselaw, it is our duty, as a federal court sitting in diversity, to make a prediction as to what law the Pennsylvania Supreme Court would apply under these circumstances. *Becker v. Interstate Properties,* 569 F.2d 1203, 1205–06 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). *Burns* is the most recent decision of the Pennsylvania Supreme Court on this question. Therefore, we will apply the *Burns* test to the facts found by the district court to determine whether, as a matter of law, Motel 6 is entitled to the easement it seeks.[12]

### B.

■ The court in *Burns* stated the test for implying an easement as follows: [13]

[W]here an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and

---

**10.** The Restatement suggests various factors that should be considered in determining if an easement is to be implied: (a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of the necessity of the easement to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties. *Restatement of Property* § 476 (1944).

**11.** *See supra* note 9.

**12.** Although we have predicted that *Burns* is the law which the Pennsylvania Supreme Court would apply if confronted with this case, the opinion in that case by no means deals with the confusion that exists as a result of the conflicting lines of Pennsylvania authority concerning

implied easements. Indeed, *Burns* compounds the confusion by citing section 476 of the Restatement with apparent approval, but without comment. Until the Pennsylvania Supreme Court comes to grips with the morass, the best that other courts can do is choose one of the conflicting tests.

**13.** The *Burns* formulation can be traced back to such cases as *Kieffer v. Imhoff,* 26 Pa. 438, 443 (1856) and *Seibert v. Levan,* 8 Pa. 383, 390–91 (1848). The precise language—absent the reference to necessity—makes its first appearance in Pennsylvania case law in *Grace Methodist Episcopal Church v. Dobbins,* 153 Pa. 294, 297, 25 A. 1120, 1121 (1893). For a discussion of the early history of the law of implied easements in Pennsylvania, see Thompson, *The Creation of Easements by Implication in Pennsylvania,* 10 Temp.L.Q. 355 (1936).

this irrespective of whether or not the easement constituted a necessary right of way.

467 Pa. at 314, 356 A.2d at 767 (quoting *Tosh v. Witts,* 381 Pa. 255, 258, 113 A.2d 226, 228 (1955)).[14] There can be no dispute that the use involved here satisfies the requirements of *Burns* that an implied easement be "open" and "visible." Like the sewage system at issue in *Bryn Mawr Hotel Co. v. Baldwin,* 12 Montg.Co.L.Rep. 145, 149 (1896), the system here was of a "notorious character." That the underground pipes may not have been "visible" in the literal sense is beside the point, because the existence of the sewage connection was known to the parties. *See Geissel v. Supplee,* 95 Pa.Super. 358, 360 (1929), (finding an easement in the use of a water pipeline when such use was "notorious" and "know[n] to both parties.")

▪ Under *Burns,* an implied easement must also be "permanent and continuous." In Pennsylvania, the "test of a continuous easement is whether or not it is of a nature adapted to continuous use." *Nauman v. Treen Box Co.,* 280 Pa. 97, 101, 124 A. 349, 350 (1924). The *Nauman* Court noted that under the common law a "drain, however infrequently used, was always held to be "[a continuous easement]." 280 Pa. at 101, 124 A. at 350. *See also Phillips v. Phillips,* 48 Pa. 178, 186 (1864) ("It may be granted that the continuance of drains, water-pipes, and mill-races may more distinctly indicate their permanent and essential nature than a mere private way . . . ."). *Cf.* 3 R. Powell,

*The Law of Real Property* § 411, at 34–86 (P. Rohan ed. 1981) (dismissing the argument that a road must be constantly used to be continuous: the "same argument might have been (but never has been) applied to sewers which could be said to be in use only when the plumbing fixtures have been operated). The sewer connection involved here certainly satisfy *Nauman* and *Phillips.*

▪ Pennsylvania law concerning the permanence of easements creates a presumption that, as long as there is nothing in the present circumstances to indicate that the right-of-way was intended to be nonpermanent, it is intended to be permanent. *Burns,* 467 Pa. at 315 n. 5, 356 A.2d at 767 n. 5; *Philadelphia Steel Abrasive Co. v. Louis J. Gedicke Sons,* 343 Pa. 524, 527–28, 23 A.2d 490, 492 (1942). Here, there is nothing in the record that would negate the presumption of permanence. *See also Dzmura v. Gyurik,* 41 Pa.Super. 398, 401 (1909) (finding an implied easement in a sewer connection, the court noted that the installation of sewage lines by the original property owner constituted a "permanent improvement" on the property). Indeed, the presumption of permanence seems eminently appropriate given the nature of the usage here.[15]

▪ In sum, on the uncontested facts in the record, the Pfiles subjected part of their property (the sewage treatment plant) to an open, visible, continuous, and permanent easement in favor of another part (the motel) and then sold the latter.[16] All of the

---

**14.** We have plenary review over what test the district court applied. Since the application of the *Burns* test requires no additional factfinding to determine that an easement should have been implied, there is no reason to remand this case to the district court for further factfinding.

**15.** *Philadelphia Steel Abrasive Co.* is an analogous case. Defendant in that case had been a tenant on property served by a railroad siding, and subsequently purchased the property. Arguing that the defendant had been a continuous permissive user and that there was no implied easement, the former landlord sought to enjoin defendant from using the siding. The landlord-plaintiff argued that the parties never intended to create a permanent right to use the siding.

Noting that the defendant had purchased property served by a railroad siding essential to his business, the court held that the "natural inference is that the right which was formerly revocable is intended to become irrevocable and permanent." 343 Pa. at 527, 23 A.2d at 492.

**16.** We also reject the Pfiles' contention that no separation of title has occurred. Separation of title is an explicit requirement of the *Spaeder* test, and is implicitly required under *Burns* as well. The Pfiles contend that the separation of title requirement has not been satisfied because no unity of ownership in the two properties existed at the time of the conveyance. They note that the sewer pipes from the motel to the sewage treatment plant crossed under a parcel

elements of the *Burns* test, therefore, are met. Additionally, we note that there is no language in the agreement of sale that would tend to negate the implication that the easement for sewage treatment services was intended to continue after Motel 6 purchased the property. *See Burns,* 467 Pa. at 315 n. 6, 356 A.2d at 768 n. 6. Having satisfied the *Burns* test, which is the test

that had been conveyed to King and Keeney, Inc., between the time the motel was built and the time that the motel and property were conveyed to Motel 6. However, this intervening ownership makes no difference. The Pfiles reserved an easement over the property for sewage and water lines. *See* Finding of Fact No. 11, February Order. By virtue of this reservation, the Pfiles were owners of a right of way. *Moffitt v. Lytle,* 165 Pa. 173, 30 A. 922 (1895). Unity of ownership is thus established. *See also Anania v. Serenta,* 275 Pa. 474, 476, 119 A. 554, 555 (1923) ("The intervening ground, in the ownership of others, through which the means of the easement's enjoyment passed, will not detract from the easement.")

17. Although under the controlling *Burns* test, a showing of necessity need not be made, *see supra* Part IIA., we note that the claimed easement would seem to satisfy the necessity requirement imposed by *Spaeder.* Clearly the motel cannot be operated without sewage services, and alternatives are arguably foreclosed either by law (given the Pfiles' status under the Pennsylvania Sewage Facilities Act) or by economic considerations (given the cost of connecting with a municipal system two miles away). At trial, Motel 6 established that Rostraver Township authorities had denied its application for a permit to build its own sewage treatment facility, citing availability of the Pfiles' plant. Motel 6 has since proffered evidence of a second denial, made with full knowledge of the Pfiles' refusal to service the motel. At trial, an officer of Motel 6 testified that there was "no way" that the Motel could procure a hook-up with the municipal system. Subsequently, Motel 6 offered to detail the economic infeasibility of this alternative. The Pfiles have controverted none of the additional evidence proffered by Motel 6. *See supra* note 7. Even if it has not already, once its newly proffered evidence is considered, it seems highly likely that Motel 6 would be able to make the showing of "high, real, and continuing necessity," which is demanded by the *Spaeder* test, as opposed to mere "convenience." *Schwoyer v. Smith,* 388 Pa. 637, 643–44, 131 A.2d 385, 389 (1957), *quoting Witman v. Stichter,* 299 Pa. 484, 489, 149 A. 725, 727 (1930); *see also Thomas v. Deliere,* 241 Pa.Super. 1, 359 A.2d 398, 400 n. 2.

that the district court should have applied, Motel 6 is entitled to the benefit of a sewage plant easement.[17]

The Pfiles have argued that this case turns on the absence of a provision for sewer treatment services in the agreement of sale, which allegedly reflects the intention of the parties about sewage service.

Although the *Spaeder* test differs from the *Burns* test because of the necessity requirement, its other requirements are similar, and would produce the same result in this case as that which we reach by applying the *Burns* standard. The *Spaeder* requirements of "continuous and obvious use" indicating permanence, *see supra* Part IIA., add nothing to *Burns.* Insofar as it applied the *Spaeder* requirement that an implied easement be "continuous and self-acting," *see supra* Part I, the district court seems to have misunderstood that requirement. We have already discussed the continuity requirement in the context of *Burns,* and, contrary to the district court's conclusion, the term "self-acting" would seem to have no independent meaning. *See Becker v. Rittenhouse,* 297 Pa. 317, 325, 147 A. 51, 53 (1929) (implied easement must be "continuous and self-acting, as distinguished from discontinuous and used only from time to time.") *Cf.* 3 R. Powell, *The Law of Real Property* ¶ 411, at 34–86 (P. Rohan rev. ed. 1981) (insofar as "continuous" means capable of being "enjoyed without the necessity of further human acts," "it creates no additional requirement with respect to sewer pipes ... or similar installations.") *See also Larsen v. Peterson,* 53 N.J.Eq. 88, 95, 30 A. 1094, 1097 (N.J.Ch.1895) (continuity requirement satisfied where structure is "of a permanent character, and ready for use at the pleasure of the owner of the dominant tenement....."); *Brand v. Lienkaemper,* 72 Wash. 547, 130 P. 1147, 1148 (1913); *Fuller v. Washington,* 19 So.2d 730, 731–32 (La.Ct.App.1944). If the district court's understanding of "self-acting" was informed by an unwillingness to find an easement requiring performance of services, it need not have been. *See infra,* p. 88. *Cf. Philadelphia Steel Abrasive Co. v. Louis J. Gedicke Sons,* 343 Pa. 524, 528, 23 A.2d 490, 492 (1942) (rejecting challenge to implied easement based on requirement that the "right created shall be incapable of being destroyed by one other than the owner of the dominant tenement.")

The Restatement § 476 test considers all of these factors, see *supra* note 11, including necessity, in determining whether an easement should be implied. *See Flaherty,* 302 Pa.Super. at 419, 448 A.2d at 1112; *Ecenbarger,* 438 A.2d at 973. Given our determination about the facts in this case, the Restatement test, which

This argument misconceives the origin and nature of an implied easement. "What determines the existence of an easement is the intention as *implied and manifested by the acts of the parties....*" *Heffley v. Lohr,* 149 Pa.Super. 586, 591, 27 A.2d 275, 278 (1942) (citing *Liquid Carbonic Co. v. Wallace,* 219 Pa. 457, 68 A. 1021 (1908)). *See also supra* note 9. The *Burns* test governs the application of those factors. If the test is satisfied, the court imputes the intent to the parties, despite the absence of express language in the agreement.[18]

■ The Pfiles have also argued that the relief requested is improper because it would require an injunction mandating the performance of a personal service. Motel 6 rejoins that an injunction in its favor would not be inconsistent with Pennsylvania case law, which permits enforcement of easements requiring collateral services by the servient tenant. The cases of *Heffley v. Lohr,* 149 Pa.Super. 586, 27 A.2d 275 (1942), and *Mullen v. Vollrath,* 4 Chester County Reporter 213, *exceptions dismissed,* 4 Chester County Reporter 306 (1949) involved servitudes for water services.[19] In both cases, injunctions were granted, without limit as to time, that required the defendants in those cases to continue operating the water pumping facilities.

We agree with Motel 6's position on this point. The sewage service requested is not a "personal service" in the sense that performance of a labor contract would be. The Pfiles' sewage treatment plant has sufficient capacity to handle the sewage from Motel 6. The Pfiles are entitled to appropriate compensation, and any injunction must be limited to requiring the Pfiles to provide service to Motel 6 as long as their sewage treatment plant remains in opera-

tion. The injunction requested here, therefore, is less burdensome than those provided in earlier Pennsylvania cases.[20]

Having determined that Motel 6 is entitled to an injunction to enforce its easement for sewer services, which shall continue for as long as the Pfiles continue to operate the sewage treatment plant, we will reverse the judgment of the district court with directions to enter an order consistent with this opinion, and we will remand the case for determination of the proper compensation to which the Pfiles are entitled for the easement.

is less stringent than *Spaeder,* would be satisfied as well.

**18.** For the same reason, district court's finding that the failure to include a contract clause concerning sewage treatment services was not a result of mutual mistake is irrelevant to our finding of an implied easement.

**19.** Both *Heffley* and *Mullen* involved easements to provide water services to dominant tenants.

In both cases, collateral services were involved; *Heffley,* for instance, involved the continued operation of a windmill to pump the water.

**20.** Another argument in favor of Motel 6's position is that, in light of the refusal of the town of Rostraver to grant Motel 6 a permit to treat its own sewage because of the availability of the Pfiles plant, the Pfiles plant is a quasi-public utility, and accordingly cannot refuse to provide service to Motel 6 without cause.