J-A07019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FRANCESCA V. GURECKA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT W. CARROLL AND HOLLY LACEY CARROLL | |
| Appellants | No. 1301 WDA 2014 |

Appeal from the Order Entered July 11, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 11-024656

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:          **FILED SEPTEMBER 09, 2015**

Robert W. Carroll and Holly Lacey Carroll (the Carrolls) appeal from the order of the Court of Common Pleas of Allegheny County that entered a permanent injunction enjoining them from interfering with the repair and use of a sewer line located on their property that services a nearby residence.  After careful review, we reverse.

The trial court set forth the factual background of the case as follows:

On October 31, 2011, [Appellee], Francesca Gurecka, entered into a written Standard Agreement for the sale of real estate with Rachel French and William Ommert, the purchasers, for the sale price of $390,000.00.  The closing date was set for November 30, 2011.  On or about November 18, 2011, it was discovered during a municipal dye test that the sewer line servicing the property had a blockage which required repair.

The plumber employed to make the repairs inserted a camera into the sewer line and discovered that the sewer line lateral proceeded to run downhill, under Forest Glen Drive and through

the property of [Appellants]. The plumber started to perform excavation and repair of the sewer line on the Carroll property when Holly Lacey Carroll instructed the plumber to cease all work and immediately vacate her property.

Common Pleas Court Judge Judith Friedman issued a preliminary injunction on December 2, 2011, authorizing the reasonable repairs of the sewer line pending further litigation and required Gurecka to post a $5.000.00 bond. Due to the future litigation surrounding the sewer line repair, the sales agreement between Francesca Gurecka and Rachel French/William Ommert was terminated.

Francesca Gurecka next sought a permanent injunction seeking to restrict the Carrolls from interfering with the repair or continued use of the sewer line. Francesca Gurecka maintains that she has a right to continued use and maintenance of the sewer due to an easement by implication, or implied easement. This case was assigned to this writer to decide whether a permanent injunction should issue, as a future sewer line blockage coupled with the Carrolls refusal to allow maintenance of the line may render the property uninhabitable.

The Carrolls maintain that they have had plans to reposition their driveway from the time of their purchase in March of 2011. The Carrolls further maintain that if the Gurecka line was to remain in the current location, any hopes of redesigning and repositioning their driveway would be impossible. The Carrolls assert that the sewer line encroaches 13 feet into their 107 foot wide lot, rendering 12.15% of their property unusable.

Trial Court Opinion, 7/11/14, at 1-2.

The trial court adopted the following joint statement of facts by the parties:

1. [Appellee], Francesca V. Gurecka, is an individual residing at 603 Cherry Blossom Way, Bridgeville, Pennsylvania 15017 and is the Trustee of the Alba N. Valli Irrevocable Trust, title[d] owner of real estate located at 8 Forest Glen Drive, Pittsburgh, Mt. Lebanon, Allegheny County, Pennsylvania 15228 (the "Property").

2. [Appellants], Robert W. Carroll and Holly Lacey Carroll are individuals residing at 13 Forest Glen Drive, Pittsburgh, Mt. Lebanon, Allegheny County, Pennsylvania 15228 (the Carrolls' Property.)

3. On October 5, 1936, Orca Geyer ("Geyer") acquired approximately 13 acres in Mt. Lebanon from Beverly Heights Company, by deed dated October 5, 1936, and recorded in the office of the Recorder of Deeds of Allegheny County in Deed Book Volume 2540, Page 204.

4. Geyer thereafter developed Forest Glen, a subdivision, which was proposed in October 1948, and accepted by Mt. Lebanon and recorded January 17, 1949, in Plan Book Volume 44, Pages 17, 18 and 19 (herineafter "Forest Glen Subdivision"). First Glen Subdivision contained 25 lots.

5. The Property is known and referred to as Lot 4 and part of Lot 5 in the Forest Glen Subdivision.

6. [The Carrolls'] Property is known and referred to as Lot 18 in the Forest Glen Subdivision.

7. A right of way for public sewer lines runs behind Lots 12, 13, 14, 15, 16, 17, 18, 19 and 21 in the Forest Glen Subdivision. These lots would be considered to be on the "low side" of Forest Glen Drive.

8. Lots 1, 2, 3, 4, 5 and 6, 7, 8, 9, 10 and 11 are on the opposite side of Forest Glen Drive and therefore on the opposite side of the public right of way. These lots would be considered on the "high side" of Forest Glen Drive.

9. [Gureka's] "high side" lot had no direct access to the public sewer therefore, Geyer, as developer, between 1949 and 1956, constructed a sewer line which went through the [Appellants'] "low side" lot and connected to the manhole which is in the public right of way.

10. The sewer line at issue which runs through [the Carrolls'] Property is located approximately 13 feet from the boundary line with Lot No. 17.

11. Geyer lived in the Property for a period of time between the 1940s and 1969. Geyer granted and conveyed Lot 18 (the Carrolls' lot) to S. Boyd Challinor and Ruth G. Challinor, by deed dated October 2, 1956, and recorded in the Office of

the Recorder of Deeds of Allegheny County in Deed Book Volume 3529, Page 489 (the "Challinor Deed").

12.   The Challinor Deed does not contain an express easement for the existing sewer line from the Property through and across the Carrolls' property to the public sewer line.

13.   Forest Glen Subdivision does not contain an express easement for the sewer line from [Gureka's] property through the [Carrolls'] property.

14.   Geyer granted and conveyed the [high-side] property to Aris V.C. Valli and Alba N. Valli by deed dated July 28, 1969 and recorded in the Office of the Recorder of Deeds of Allegheny County in Deed Book Volume 4763, Page 249.

15.   Aris V.C. Valli died August 26, 1976, thereby vesting full title in fee simple through survivorship in his wife Alba N. Valli.  Alba N. Valli thereafter transferred the property in trust naming her daughter Francesca V. Gurecka as Trustee.

16.   Challinor conveyed Lot 18 to the Appellants by deed dated March 24, 2011, and recorded in deed book volume 14535 page 310.  The Challinor Deed does not contain any reference to the sewer line running through the [Carrolls'] property.

17.   There are four visible manholes located on the [Carrolls'] Property; two located at the back of the property across the creek and two located on this side of the creek; one on the bottom left and one to the bottom right (Identified as Manholes #1 and #2 respectively).

18.   [Manhole] #1 and [manhole] #2 are located within the sanitary sewer right of way which traverses the [Carrolls'] property.

19.   [Gureka's] sewer line runs right into public manhole #2 while the [Carrolls'] sewer line doesn't connect to a public manhole but taps into the public sanitary sewer line which traverses [the Carrolls'] property.

. . .

21.   [Gureka] discovered the existence of the sewer line during a home inspection in November 2012.

- 4 -

*Id.* at 3-5.

Based on the stipulated facts, the briefs of the parties and a visit to the subject property, the trial court issued an opinion and order on July 14, 2014, making permanent the preliminary injunction entered on December 2, 2011.

The Carrolls filed a timely appeal, in which they raise the following issues for our review:

1. Whether the trial court committed an error of law in determining that the "open and visible" prong of the test for an implied easement was satisfied in the case where the existence of the sewer line was unknown to either of the current property owners, it was wholly undocumented in any deed or plan of lots, and had no physical features of its own above visible ground but the trial court held that merely because (a) the municipal sewer main, which is depicted on the Forest Glen Plan of lots, traverses the rear of the [Carrolls'] lot and (b) four physical sewer access manhole covers are visible on the [Carrolls'] lot, the [Carrolls] were provided legal notice that an individual sewer line serving another property was present approximately parallel to the boundary of an adjacent property.

2. Whether the court below committed error of law by holding that there was an implied easement merely because the sewer line in question had been in existence for fifty years although wholly unknown to the [Carrolls] and their predecessor landowners where [Gurecka] cannot establish that her property would be rendered uninhabitable as she can readily tap into the public sewer line through an express right of way that is also downhill of her property and also across Forest Glen Road.

Appellants' Brief, at 4.[1]

"When reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Tp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002).

In *Bucciarelli v. DeLisa*, 691 A.2d 446 (Pa. 1997), our Supreme Court noted:

> The traditional test for implied easement at severance of title is set out in *Burns Manufacturing v. Boehm*, 356 A.2d 763, 767 (Pa. 1976):
>
>> It has long been held in this Commonwealth that although the language of a granting clause does not contain an express reservation of an easement in favor of the grantor, such an interest may be reserved by implication, and this is so notwithstanding that the easement is not essential for the beneficial use of the property. . . . The circumstances which will give rise to an impliedly reserved easement have been concisely put by Chief Justice Horace Stern speaking for the Court in *Tosh v. Witts*, [113 A.2d 236 ([Pa.] 1955)]:
>>
>>> Where an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way. *Tosh v. Witts*, *supra* . . . at 228.
>
> (Citations omitted). The *Boehm* court further stated:

---

[1] We have reversed the order of the issues in order to facilitate our discussion.

> Easements by implied reservation . . . are based on the theory that continuous use of a permanent right-of-way gives rise to the implication that the parties intended that such use would continue, notwithstanding the absence of necessity for the use.

> 365 A.2d at 767 n.4.

**Bucciarelli**, **supra**, at 448-49.

> In order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law.

**Buffalo Tp.**, **supra** at 663 (citations and quotations omitted).

Here, the 1956 deed from Geyer to the Challinors does not include an express reservation of a sewer easement. In a verification affidavit attached to the Carrolls' answer to Gureka's motion for partial summary judgment, Challinor avers that when he and his wife purchased Lot 18 from Gureka, "they were not informed, and had no knowledge of a private sewer line from the [h]ouse occupying Lot No. 4." Affidavit of S. Boyd Challinor, 12/10/11. The Carrolls were likewise unaware of the existence of the sewer line when they purchased their property from the Challinors.

In the absence of an express easement, the question before the trial court was whether an easement by implication was created at the time of the severance of title in 1956. Critical to this determination is whether the Carrolls' property is subject to an "open, visible and permanent" easement. **See Tosh**, **supra**. The trial court held that it is, stating: "[T]he array of

manholes in the rear of the [Carrolls'] property does place [the Carrolls] on notice of a network of sewer lines coming onto and crossing their property." Trial Court Opinion, 7/11/14, at 8.

In support of the trial court's determination, Gurecka cites to **Motel 6 v. Pfile**, 718 F.2d 80 (3d. Cir. 1983) for the proposition that "Pennsylvania Courts have recognized sewer lines, not visible on the surface of the land, to be given implied easement status." Appellees Brief, at 3. While this is true, it is instructive to consider the following discussion of the issue by the **Motel 6** court:

> There can be no dispute that the use involved here satisfies the requirements of [**Boehm**] that an implied easement be "open" and "visible." Like the sewage system at issue in **Bryn Mawr Hotel Co. v. Baldwin**, 12 Montg.Co.L.Rep. 145, 149 (1896), the system here was of a "notorious character." That the underground pipes may not have been "visible" in the literal sense is beside the point, because the existence of the sewage connection was known to the parties. **See Geissel v. Supplee**, 95 Pa. Super. 358, 360 (1929), (finding an easement in the use of a water pipeline when such use was notorious and "know[n] to both parties.")

**Motel 6**, at 85.

Therefore, **Motel 6** stands for the limited proposition that an implied easement for sewer lines can exist where the open and visible requirements are met.

Our review of the record indicates that at no time has Gurecka established that manholes are commonly used at connection points between private sewer pipes and municipal sewer lines. She has attached no

affidavits to this effect to any of the pleadings, nor has she provided citation to the law of Pennsylvania or any other jurisdiction in support of this critical issue. Accordingly, Gurecka has provided an insufficient basis on which the court could find "the subject sewer, and for that matter, the network of sewers in the area of the [Carrolls'] property to be open, visible and permanent." Trial Court Opinion, 7/11/14, at 8.

On the record provided, Gureka has not established a clear right to a permanent injunction. *See Buffalo Tp.*, *supra*. Therefore, we are constrained to reverse the order of the trial court.[2]

Order reversed.

Mundy, J., Joins the memorandum.

Bender, PJE., Files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015

---

[2] Because of our disposition of the first issue, we will not address the Carrolls' position that Gurecka is not entitled to relief because there is an easement for sewers straddling the lot line between Lot Nos. 19 and 21, which would allow her to connect a new sewer to the main sewer line. *See* Trial Court Opinion, 7/11/14, at 7.